1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11  GRADY VERNON LONG, ISMAIL ISA, and       )   Case No.: 12-CV-03578-LHK
    WARREN JEREMIAH SPIES,                    )
12                                            )
                      Plaintiffs,             )   ORDER GRANTING-IN-PART AND
13          v.                                )   DENYING-IN-PART CROSS-MOTIONS
                                              )   FOR SUMMARY JUDGMENT AND
14  NATIONWIDE LEGAL FILE & SERVE, INC., )      DENYING MOTION FOR LEAVE TO
    NATIONWIDE LEGAL, LLC, and CAESAR    )      AMEND
15  ERIC RAILEY,                              )
                                              )
16                    Defendants.             )
                                              )
17  _____)

18          Before the Court are cross-motions for summary judgment filed by Plaintiffs Grady Vernon

19  Long ("Long"), Ismail Isa ("Isa"), and Warren Jeremiah Spies ("Spies") (collectively, "Plaintiffs")

20  and by Defendants Nationwide Legal File & Serve, Inc. ("NLFS") and Nationwide Legal, LLC

21  ("Nationwide") (collectively, "Defendants").  ECF Nos. 50, 53.  Defendants also move for leave to

22  file an amended answer.  ECF No. 51.  Defendant Caesar Eric Railey ("Railey") failed to appear in

23  this action, and default was entered against him on December 6, 2012.  ECF No. 21.  Pursuant to

24  Civil L.R. 7-1(b), the Court found oral argument unnecessary to the resolution of this dispute.

25  Having carefully considered the parties' papers and the record in this case, the Court DENIES

26  Defendants' motion for leave to file an amended answer, GRANTS-IN-PART and DENIES-IN-

27  PART Defendants' motion for summary judgment, and GRANTS-IN-PART and DENIES-IN-

28  PART Plaintiffs' motion for summary judgment.

                                              1
    Case No.: 12-CV-03578-LHK
    ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO
    AMEND

*United States District Court*
*For the Northern District of California*

# I.     BACKGROUND

This case arises out of Plaintiffs' allegations that Defendants engaged in "sewer service," a practice whereby a proof of service is filed in court stating that a party has been served when in reality no service has occurred.  As a result of the falsified proof of service, default and default judgment are entered against the unaware parties.  Plaintiffs assert that each of them is a victim of Defendants' "sewer service."

## A.     Plaintiffs

Plaintiffs are each alleged debtors against whom the law firm Nelson & Kennard filed debt collection actions on behalf of various clients.  *See* ECF No. 1 (Compl.) Exs. 1, 2, 3.  In each case, Nelson & Kennard used the services of NLFS to serve process on Plaintiffs.  *See* Compl. Exs. 1, 2, 3.  NLFS, in turn, relied on the services of Railey, a registered process server, to serve Plaintiffs.  ECF No. 52-2 (NLFS's Resp. to Pl. First Set of Interr.) at 10-11; Compl. Exs. 1, 2, 3.

### 1.     Grady Vernon Long

Nelson & Kennard filed a debt collection action against Long for consumer debt originating from an HSBC credit card.  ECF No. 50-1 (Long Decl.) ¶¶ 4-5; Kennard Decl. ¶¶ 2, 3.  On July 11, 2011, Railey completed and signed a proof of service of summons attesting that he had personally served Long.  ECF No. 50-8.  Long states that he never received service, whether personally or otherwise.  Long Decl. ¶ 6.  Because Long had no notice of the action and thus failed to appear, default judgment was entered against Long.  Long Decl. ¶ 5.  Long only found out about the existence of the action against him through a lien notice received in November 2011.  *Id.*  Judge Barbara Kronlund, sitting in the San Joaquin County Superior Court, issued a tentative ruling setting aside Long's default and default judgment and noting that evidence supported Long's statement that he had not been served.  ECF No. 50-9.

### 2.     Ismail Isa

On July 20, 2011, Railey completed and signed a proof of service of summons attesting that he had personally served Isa.  ECF No. 50-10.  The proof of service describes Isa as "Black, Male, 35 Years Old, Black Hair, Brown Eyes, 5 Feet 9 Inches, 180 Pounds."  *Id.*  According to the copy of the drivers license that Isa submitted, Isa was 68 years old at the time of service and is East

2

United States District Court
For the Northern District of California

Indian.  ECF No. 50-2 (Isa Decl.) Ex. A; Isa Decl. ¶ 8.  Isa also states he had not lived at the

address Railey noted on the proof of service for almost a year at the time of service.  Isa Decl. ¶ 7.

After Isa learned of the default judgment entered against him through an earnings withholding

order, Isa retained an attorney and successfully challenged the proof of service.  Isa Decl. ¶¶ 5, 10.

Isa's default judgment was set aside.  Isa Decl. ¶ 10.

### 3.    Warren Jeremiah Spies

On August 1, 2011, Railey completed and signed a proof of service of summons attesting

that he successfully served Spies by substitute service.  ECF No. 50-11.  According to Spies, Spies

never received service because since November 2010 Spies had not lived at the address referenced

on Railey's completed proof of service document.  ECF No. 50-4 (Spies Decl.) ¶¶ 8, 9.  Spies

states that to the best of his knowledge, no one was living at the address where Railey purportedly

served Spies at the time that Railey documented serving Spies.  Spies Decl. ¶ 9.  Spies first learned

of the default judgment entered against him when an employee of Nelson & Kennard wrote him a

letter stating that the firm had obtained a judgment against him.  Spies Decl. ¶ 5.

### B.    Defendants

NLFS is a California corporation that provides court filing and service of process services.

Godshall Decl. ¶ 25-27.  NLFS was formed in March 2008 by Tony Davoodi ("Davoodi"), Bejan

Akhaven ("Akhaven"), and Holly Godshall ("Godshall").  ECF No. 54 (Ektefaie Decl.) ¶ 23.

NLFS has approximately 20 employees.  ECF No. 55 (Godshall Decl.) ¶ 11.  NLFS clients include

law firms specializing in consumer debt collection.  Godshall Decl. ¶ 25.

NLFS hires registered process servers as independent contractors, and entrusts them with

serving process in accordance with the specifications of NLFS's clients.  Godshall Decl. ¶¶ 28, 37.

For any given matter, NLFS's clients supply instructions, the summons, the defendant's address,

and the complaint.  Godshall Decl. ¶ 37.  NLFS files the lawsuit and uses its contracted process

servers to attempt to serve process in accordance with the client's instructions.  Godshall Decl. ¶

37.  NLFS provides guidelines and instructions to its process servers, including a "Code of Ethical

and Professional Conduct."  Godshall Decl. ¶ 35, Exs. 8, 9.

Case No.: 12-CV-03578-LHK
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO
AMEND

Nationwide was initially formed as "Nationwide, Inc." in January 2007.  Ektefaie Decl. ¶ 4. In August 2010, the entirety of the business of "Nationwide, Inc." was transferred to Nationwide. Ektefaie Decl. ¶ 5.  Davoodi and Akhaven own Nationwide.  Ektefaie Decl. ¶ 8.  Nationwide provides law firms with "attorney support services" including filing legal documents, service of process, messenger services, and assistance in document production.  Ektefaie Decl. ¶ 9.  Unlike NLFS, Nationwide does not provide services to law firms specializing in consumer debt collection. Ektefaie Decl. ¶ 11.

According to Defendants, Nationwide and NLFS operate separately.  Ektefaie Decl. ¶¶ 24-38; Godshall Decl. ¶¶ 7-24.  The entities pay separate rent for separate office space, maintain separate records for accounting, have separate insurance, and have separate employees.  Godshall Decl. ¶¶ 11-14.  The funds and incomes of the two businesses have never been commingled. Godshall Decl. ¶¶ 14-15.  Nationwide and NLFS do not share clients.  Godshall Decl. ¶ 10.

The entities do have some ties.  For example, Davoodi and Ekhaven, who co-own Nationwide, are founders with Godshall of NLFS.  Godshall Decl. ¶ 6; Ektefaie Decl. ¶ 8, 23. Nationwide's general manager and chief administrative officer, Mehdi Ektefaie ("Ektefaie"), serves as an officer with NLFS, advises NLFS management, assists with NLFS human resources decisions, and assisted with the licensure process for NLFS.  Ektefaie Decl. ¶¶ 35-37.  Ektefaei has never been on payroll at NLFS.  Ektefaie Decl. ¶ 35.  Nationwide and NLFS at times share legal advice regarding service of process or human resources, and the companies pay the resulting bills in proportion to the services rendered.  Ektefaie Decl. ¶ 34.  The businesses share an address, though they do not share office space.  Ektefaie Decl. ¶ 26.  As noted, the entities pay separate rent for their office spaces.  *Id.*

In February 2011, Railey signed an independent contractor agreement with Nationwide. Ektefaie Decl. Ex. 7.  Railey also was a process server for NLFS, serving in an independent contractor capacity.  ECF No. 7 (Answer) at 13 ¶ 7; ECF No. 64 (Godshall Opp. Decl.) ¶ 35. Railey's assignments at NLFS included service on Plaintiffs Long, Isa, and Spies.  Godshall Decl. ¶ 63; Compl. Exs. 1, 2, 3.  Nationwide has not assigned work to Railey since Plaintiffs instituted this action.  Ektefaie Decl. ¶ 66.

Case No.: 12-CV-03578-LHK
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO AMEND

Based on these facts, Plaintiffs bring this action seeking relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.; the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civil Code § 1788 et seq; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  Compl. ¶¶ 90-133.

## II.    LEGAL STANDARDS

### A.    Motion for Leave to Amend

Rule 15(a)(2) states that leave to amend the pleadings should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).  In general, the Court considers five factors in assessing a motion for leave to amend: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the [pleading]." *Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir. 2004).  Although this rule "should be interpreted with extreme liberality, leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir. 1990) (internal citation and quotation marks omitted).  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995).

In cases where, as here, a party moves to amend an answer after the Court's deadline for amending the pleadings, Fed. R. Civ. P. 16 governs, and the party must show good cause and obtain the judge's consent to modify the deadlines set by the Court.  *See* Fed. R. Civ. P. 16(b)(4)**.** "The 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Hannon v. Chater,* 887 F. Supp. 1303, 1319 (N.D. Cal. 1995) (internal alterations and quotations omitted) (quoting *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607–08 (9th Cir. 1992)).

### B.    Motion for Summary Judgment

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," the court may grant summary judgment. *Id.* at 249–50 (citation omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell,* 547 U.S. 518, 559–60 (2006).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex,* 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

### III.     Motion for Leave to Amend Answer

The Court begins with Defendants' request to amend their answer to add the bona fide error affirmative defense. On November 28, 2012, the Court entered a case management order setting January 4, 2013 as the deadline for amendments to the pleadings in this case. ECF No. 20. That deadline has long since passed, and thus Defendants must show good cause pursuant to Rule 16(b) to justify an amendment to the scheduling order. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Only if Defendants show good cause and lack of prejudice to Plaintiffs for the amendment of the case scheduling order does the Court move to Rule 15(a) to address whether an amendment to Defendants' answer is appropriate. *Id.* Under Rule 15(a), the Court considers "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the [pleading]." *Buckley,* 356 F.3d at 1077.

The Court finds that Defendants have not met the standard under Rule 16(b) to change the case management order deadline to now amend their answer. Defendants are candid that inadvertence is the only reason that the bona fide error defense was not asserted in the original answer. ECF No. 70 (Reply Leave to Am.) at 2. In other words, Defendants do not offer new

6

evidence or new law or any other circumstance that alerted them at this late stage of the proceedings to a necessary change in the answer. Defendants assert only that Plaintiffs will not be prejudiced because the bona fide error defense was implicit in each parties' discovery. *Id.*; ECF No. 51 (Mot. Leave to Am.) at 8. Plaintiffs do not claim prejudice. However, the Court notes that fact discovery closed on May 31, 2013, with the exception of Railey's deposition on July 18, 2013. ECF No. 46. Expert discovery closed on July 12, 2013. *Id.* Trial will begin on October 21, 2013. *Id.* Defendants filed their motion for leave to file an amended answer on July 26, 2013, after the close of both fact and expert discovery. ECF No. 51. Thus, Defendants have not shown diligence or indeed good cause generally to amend their answer at this stage. Given Defendants' lack of diligence and lack of good cause, denial of Defendants' request to amend the answer is appropriate, and the Court need not and does not reach the issues of prejudice to Plaintiffs or whether amendment to the answer is appropriate under Rule 15(a). *See Johnson*, 975 F.2d at 609 ("If [the moving] party was not diligent, the inquiry should end."). On this basis, Defendants' request for leave to amend the answer is DENIED.

Despite finding that Defendants have not met their burden to change the case scheduling order deadline for amendments to pleadings, the Court nevertheless considers Defendants' bona fide error defense in this motion. The Ninth Circuit has advised that an affirmative defense raised for the first time in opposition to summary judgment may be considered unless the plaintiff argues prejudice from the late assertion of the defense. *Paine v. City of Lompoc*, 265 F.3d 975, 980 n.1 (9th Cir. 2001); *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993). As stated above, Plaintiffs do not claim prejudice. Because Plaintiffs have not argued prejudice, the Court addresses the bona fide error defense when considering the cross-motions for summary judgment.

## IV.   Summary Judgment Motions

### A.   Defendants' Motion for Summary Judgment

The Court turns now to the motions for summary judgment, beginning with Defendants' motion. Defendants move for summary judgment on three grounds: (1) that Nationwide is not a proper party to this litigation; (2) that neither NLFS nor Nationwide exerted sufficient control over Railey to be vicariously liable for his actions; and (3) that Defendants had sufficient procedures in

7

place to be entitled to the bona fide error defense.  The Court begins with whether Plaintiffs have produced sufficient evidence to raise a triable issue of fact regarding Nationwide's liability.  The Court then turns to Defendants' arguments regarding vicarious liability and the bona fide error defense.

### 1.  Nationwide's Liability

Defendants argue that Plaintiffs failed to produce sufficient evidence that Nationwide can be held liable for the actions of NLFS or Railey.  Defendants alternatively argue that Nationwide is not a "debt collector" as defined by the FDCPA.

In the complaint, Plaintiffs allege that Nationwide, NLFS, and Railey each "were regularly engaged in the business of collecting consumer debts . . . by assisting other debt collectors [to] file and maintain civil debt collection lawsuits."  Compl. ¶ 17.  Plaintiffs further allege that "each of the Defendants . . . were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants, and were at all times acting within the purpose and scope" of that relationship.  Compl. ¶ 19.

Defendants argue that Plaintiffs have not produced sufficient evidence to raise a triable issue of fact that Nationwide was either directly involved in the proofs of service at issue or that Nationwide was an alter ego of NLFS such that Nationwide should be liable for NLFS's actions. Defendants go further, asserting that in fact there is no triable issue of fact that Nationwide is not a proper party to this case because it is a separate corporate entity and no evidence suggests that it was directly involved in the services of process or subsequent proofs of service underlying this suit.

Plaintiffs notably do not dispute that they have offered little evidence that Nationwide directly engaged in the actions Plaintiffs allege.  ECF No. 67 (Pl. Opp. to Def. Mot. Summ. J. ("Pl. Opp.")) at 7-9; ECF No. 69 (Pl. Reply to Pl. Mot. Summ. J. ("Pl. Reply")) at 1-3.  The evidence presented to the Court reveals that Railey signed off on the proofs of service as an independent contractor working for NLFS.  Compl. Exs. 1, 2, 3 (proofs of service signed by Railey and indicating service was provided for NLFS).  The evidence further supports that Nationwide does not engage in service of process for debt collection cases and does not have clients in the collections business.  ECF No. 50-13 (Ektefaie Depo.) at 61:10-17, 62:3-4.  The only evidence that

8

suggests that Nationwide may have been directly involved is a statement by Ektefaie, an officer of both Nationwide and NLFS, that Nationwide occasionally files proofs of service for NLFS. Ektefaie Depo. at 61:25-62:3. But that evidence does not support that Nationwide did so with regards to the proofs of service at issue here. Because no evidence suggests that Railey acted as an independent contractor or employee of Nationwide during the events at issue or that Nationwide independently filed the allegedly false proofs of service at issue, the Court finds that Plaintiffs have not established a triable issue of fact regarding Nationwide's direct or vicarious liability for the actions allegedly taken by Railey underlying this litigation.

Plaintiffs instead argue that Nationwide and NLFS are alter egos or "joint venturers" and that because of the overlap in their operations, Nationwide and NLFS in fact are one enterprise. Pl. Opp. at 8; Pl. Reply at 1. Plaintiffs argue that as a result Nationwide may be held liable in parallel to NLFS. Plaintiffs also conclusorily allege that Nationwide and NLFS stand in agency or as servants, employers, partners, divisions, owners, subsidiaries, aliases, and/or assignees. Plaintiffs have not offered sufficient evidence and in fact do not really argue that the evidence establishes these other legal relationships. The Court therefore considers only whether Plaintiffs have raised a triable issue of fact regarding the alter ego and joint venture theories.

### a.      Alter-Ego

"In determining whether alter ego liability applies, [the Court] appl[ies] the law of the forum state." *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010). "California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice.'" *Id.* (quoting *Wood v. Elling Corp.*, 20 Cal. 3d 353, 364 n.9 (1977)); *see also Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985). Both factors must be met to establish alter ego liability. *Mesler*, 39 Cal. 3d at 300. "Whether a party is liable under an alter ego theory is a question of fact." *Leek v. Cooper*, 194 Cal. App. 4th 399, 418 (2011).

In making that determination, California courts consider factors such as: "[c]ommingling of funds and other assets"; "failure to segregate funds of the separate entities"; "the disregard of legal

9

Case No.: 12-CV-03578-LHK
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO AMEND

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

formalities and the failure to maintain arm's length relationships among related entities"; "the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities"; "the identical equitable ownership in the two entities"; "the identification of the equitable owners thereof with the domination and control of the two entities"; "identification of the directors and officers of the two entities in the responsible supervision and management [sic]"; "the use of the same office or business location"; "the employment of the same employees and/or attorney"; and "the failure to adequately capitalize a corporation." *Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-39 (1962).

   Plaintiffs assert that significant evidence shows that the two corporate entities overlap in operations and in personnel.  Plaintiffs offer, for example, the fact that the two owners of Nationwide, Davoodi and Akhavan, founded NLFS with Godshall.  Ektefaie Decl. ¶ 23.  Plaintiffs also point to Ektefaie, who serves as an officer for both Nationwide and NLFS.  Ektefaie Depo. at 43:3-8; 47:19-21.  Plaintiffs provide evidence that the two entities use the same attorney for human resources and operations questions.  Ektefaie Decl. ¶ 34.  NLFS and Nationwide are in the same office building and distribute identical internal memoranda.  Ektefaie Decl. ¶ 26; Ektefaie Depo. at 66:10-67:6.

   Plaintiffs further assert that NLFS and Nationwide operate in a manner that reveals they are one entity.  Plaintiffs highlight that Ektefaie at one point referred to NLFS as Nationwide's "collections department."  Ektefaie Depo. at 159:1-7.  Plaintiffs point out that Railey originally was hired by Nationwide in February 2011.  Ektefaie Depo. at 106:1-109:1, Ex. 8.  Plaintiffs also highlight that Ektefaie testified that although Nationwide does not serve collection documents, if NLFS "need[s] [Nationwide's] help," Nationwide will "go and file" "documents for collection."  Ektefaie Depo. at 61:10-17, 61:25 – 62:3.  According to Ektefaie, NLFS, however, has to "get permission" to use Nationwide's employees.  Ektefaie Depo. at 63:14-16.

   Defendants offer in response that Nationwide and NLFS maintain separate business licenses, bank accounts, and tax ID numbers.  Ektefaie Decl. ¶ 27; Godshall Decl. ¶ 13.  No funds have been transferred between the two entities' accounts.  Godshall Decl. ¶ 15.  Other than Ektefaie, who provides assistance to NLFS, Nationwide and NLFS do not share employees.

Case No.: 12-CV-03578-LHK
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO AMEND

1   Godshall Decl. ¶¶ 11, 20-21.  NLFS has made sufficient monthly income that NLFS has never

2   failed to pay any debts, bills, or payroll, and NLFS's insurance is current.  Godshall Decl. ¶ 23.

3       The evidence Plaintiffs proffer, however, does not create a triable issue of fact about

4   whether NLFS is an alter ego of Nationwide because the evidence fails to support the second prong

5   of the alter ego doctrine, namely that an injustice or fraud would result if the corporate forms were

6   recognized.  *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994) (observing

7   that evidence of "100 percent" stock ownership of the subsidiary, "shared office space and policy

8   manuals," "common personnel," and "consolidated financial statements" were "woefully short" of

9   the necessary showing for alter ego liability).  "Alter ego is a limited doctrine, invoked only where

10  recognition of the corporate form would work an injustice to a third person."  *Id.*  "[W]hile the

11  doctrine does not depend on the presence of actual fraud, it is designed to prevent what would be

12  fraud or injustice, if accomplished."  *Assoc. Vendors*, 210 Cal. App. 2d at 838.  "Accordingly, bad

13  faith in one form or another is an underlying consideration."  *Id.*

14      Although the evidence suggests overlap in operations between the two entities, Plaintiffs

15  have not produced evidence that corporate formalities were ignored or that NLFS is unable to pay

16  its debts.  *Tomaselli*, 25 Cal. App. 4th at 1285 (noting "inadequate capitalization, commingling of

17  assets, disregard of corporate formalities" are "critical facts" to finding alter ego liability

18  appropriate).  As Defendants point out, NLFS is current on its debts.  Godshall Decl. ¶ 23.

19  Plaintiffs produce no evidence suggesting that NLFS is undercapitalized, or that NLFS lacks assets.

20  Other than arguing that the corporate entities overlap and thus should be considered one entity,

21  Plaintiffs neither argue nor produce evidence suggesting that an injustice or fraud would result if

22  Nationwide were not considered the same entity as NLFS.  As a result, Plaintiffs' alter ego theory

23  fails.

        **b.   Joint Venture**

25      In California, a "joint venture is an undertaking by two or more persons jointly to carry out

26  a single business enterprise for profit."  *Goldberg v. Paramount Oil Co.*, 143 Cal. App. 2d 215, 219

27  (1956) (internal citations and quotations omitted).  To constitute a joint venture, "there must at

28  least be (a) a community of interest in the object of the undertaking; (b) an equal right to direct and

                                          11

**United States District Court**
For the Northern District of California

govern the conduct of each other with respect thereto; (c) share in the losses if any; [and] (d) close and even fiduciary relationship between the parties." *Id.* "A joint proprietary interest and right of mutual control over the subject matter of the enterprise or over the property engaged therein are essential to a joint venture." *Id.*

Plaintiffs offer the same evidence regarding the overlap between NLFS and Nationwide to support Plaintiffs' joint venture theory. Plaintiffs' evidence does not support that Nationwide and NLFS have a "community of interest." Although both corporate entities engage in service of process, NLFS deals with collection cases while Nationwide handles unlawful detainer, family law, and bankruptcy proceedings. Ektefaie Depo. at 61:4-17, 62:3-4; Godshall Decl. ¶ 25. Plaintiffs furthermore do not offer evidence that NLFS and Nationwide share in the losses of whatever joint interest the two corporate entities may have. The evidence before the Court suggests that Nationwide and NLFS in fact segregate their finances. Ektefaie Decl. ¶ 27; Godshall Decl. ¶¶ 13, 15. Even construed in the light most favorable to Plaintiffs, the evidence does not support that Nationwide and NLFS are joint venturers.

Because Plaintiffs have not raised a triable issue of fact that Nationwide is directly liable for the actions of Railey or that Nationwide is an alter ego or joint venturer of NLFS, summary judgment in favor of Nationwide and against Plaintiffs is warranted. Nationwide's motion for summary judgment is GRANTED, and consequently Plaintiffs' motion for summary judgment as to Nationwide is DENIED. Because the Court finds that summary judgment in favor of Nationwide is appropriate, the Court need not and does not address Defendants' alternative argument that Nationwide is not a debt collector as defined under the FDCPA.

Furthermore, because the Court grants summary judgment in favor of Nationwide, the Court need only consider NLFS's arguments in determining whether summary judgment is warranted on vicarious liability and/or the bona fide error defense grounds. The Court first addresses NLFS's vicarious liability argument before turning to NLFS's bona fide error defense argument.

Case No.: 12-CV-03578-LHK
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO AMEND

United States District Court
For the Northern District of California

### 2.    Vicarious Liability

NLFS argues that Railey is an independent contractor, and that NLFS did not have the requisite control over Railey's actions to justify imposing vicarious liability on NLFS.  For NLFS to be vicariously liable for Railey's actions, two requirements must be met: (1) NLFS and Railey both must be "debt collectors" as defined by the FDCPA; and (2) NLFS must have control over the actions of Railey, who was an independent contractor of NLFS during the period at issue in this case.  *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1076 (N.D. Cal. 2011).  In NLFS's motion for summary judgment, NLFS argues only that NLFS lacked control over Railey.  ECF No. 53 (Def. Motion Summ. J.) at 6-10.  Although NLFS argues in its opposition to Plaintiffs' motion for summary judgment that NLFS is not a "debt collector" under the FDCPA, NLFS fails to raise this issue in its motion for summary judgment.  NLFS also does not address Railey's status as a "debt collector."  Accordingly, the Court addresses only NLFS's control argument here.  The Court addresses NLFS's debt collector argument in the Court's consideration of Plaintiffs' summary judgment motion.

The Court turns now to NLFS's control argument.  Highlighting that Railey is an independent contractor rather than an employee, NLFS asserts that Plaintiffs have not offered sufficient evidence to establish that NLFS had sufficient control over Railey to warrant holding NLFS vicariously liable.  Plaintiffs counter that NLFS's procedures indicate sufficient control over Railey to establish vicarious liability.  Plaintiffs further assert that California law obligates NLFS to be responsible for Railey's actions.

"[G]eneral principles of agency . . . form the basis of vicarious liability under the FDCPA." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006).  Consistent with those general principles, "to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'"  *Id.*  The party "seeking to prove that an agency relationship existed" must show that "the person for whom the work is performed has the right to control the activities of the alleged agent."  *Fenton v. Freedman*, 748 F.2d 1358, 1361-62 (9th Cir. 1984).  "It is not necessary to prove that the principal exercised his right of control or actually supervised the work of the agent, so long as the existence of the right is established from

13

United States District Court
For the Northern District of California

the facts." *Id.* at 1362. "Conversely, if control may be exercised only as to the result of the services performed and not the means and methods by which it is accomplished, then the provider is an independent contractor, and not an agent." *Id.* An agency relationship generally is a question of fact. *Seneris v. Haas*, 45 Cal. 2d 811, 831 (1955).

In support of NLFS's argument that it lacks sufficient control over Railey, NLFS primarily offers evidence that counters the allegations in Plaintiffs' complaint that support a finding that NLFS had control over Railey. NLFS offers evidence that the independent contractors take assignments from other entities and that NLFS cannot compel an independent contractor to accept an assignment. Godshall Decl. ¶¶ 31, 34. NLFS chooses assignments for the independent contractors based only on the location of the independent contractor. Godshall Decl. ¶ 42. NLFS limits the independent contractor's ability to reassign the service to another party only to the extent that NLFS requires the third party to be licensed and bonded as a process server. Godshall Decl. ¶¶ 43-44. NLFS does not track the independent contractors with GPS (Godshall Decl. ¶¶ 45-46), is not named as an additional insured on the independent contractors' insurance (Godshall Decl. ¶ 49), and does not have a pay structure based on the success of the service of process (Godshall Decl. ¶¶ 50-53). NLFS instead pays a flat fee regardless of the success of the service and pays extra only for rush services, services involving stakeout, or services with a second address. Godshall Decl. ¶¶ 50-53.

In response, Plaintiffs point to Cal. Bus. & Prof. Code § 22356, which states that a "registrant shall be responsible at all times for the good conduct of his or her employees acting within the course or scope of their employment, and any person acting as an independent contractor within the course or scope of the agency relationship with the registrant." The Court has found only one case, however, where Section 22356 was cited in support of a finding that vicarious liability should be imposed. *Kappel v. Bartlett*, 200 Cal. App. 3d 1457, 1466 (1988). In *Kappel*, the California Court of Appeal held that a complaint had stated sufficient facts to allege that a process server was acting as an agent of the clients for whom he was serving process and cited Section 22356 as well as three cases in support. *Id.* The *Kappel* Court did not explain whether the process server was an employee, but this Court notes that the cases cited in support all considered

14

the vicarious liability of employees, not independent contractors. *Id.* (citing *Hinman v. Westinghouse Elec. Co.*, 2 Cal. 3d 956, 959–60 (1970); *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 618 (1975); and *Perez v. Van Groningen & Sons*, 41 Cal. 3d 962, 968 (1986)).

The Court need not reach the issue of whether Section 22356 establishes NLFS's vicarious liability over Railey, however, because Plaintiffs also offer evidence that raises a triable issue of fact regarding whether NLFS had control over Railey.  Plaintiffs offer evidence that NLFS assigned work based on "reliability, accuracy of information, and timeliness" of the independent contractors' performance.  ECF No. 67-13 (Ektefaie Depo.) at 72:5-11.  Plaintiffs also point to the guidelines that NLFS provided to its independent contractors, and NLFS's insistence that the independent contractors "adhere to those guidelines in order to receive work from" NLFS.  ECF No. 67-15 (Godshall Depo.) at 44:5-12.  As Plaintiffs highlight, the independent contractors have to provide updates to NLFS every three days (Godshall Depo. at 58:7-15), and the independent contractors are required to make seven attempts at service before abandoning the attempt (Godshall Depo. at 59:20-60:5).

Taking all inferences in Plaintiffs' favor as is required in evaluating NLFS's motion, the Court finds that Plaintiffs' evidence raises a triable issue of fact about whether NLFS exerted sufficient control over Railey.  NLFS's request for summary judgment on the vicarious liability issue therefore is DENIED.

### 3. Bona Fide Error Defense

NLFS finally argues that the bona fide error defense applies to preclude Plaintiffs' claims.  The FDCPA provides a "narrow exception to strict liability" for bona fide errors.  *Reichert v. Nat. Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008).  To successfully assert the bona fide error defense, NLFS must demonstrate that (1) it committed a "violation," (2) the error "was not intentional," (3) NLFS maintained "procedures reasonably adapted to avoid any such error," and (4) the error occurred notwithstanding the maintenance of such procedures.  15 U.S.C. § 1692(k)(c).  The defense applies to "procedures reasonably designed . . . to avoid errors like clerical or factual mistakes."  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S.

15

573, 587 (2010). "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *Reichert*, 531 F.3d at 1006.

NLFS points to its policy of using only bonded, licensed process servers and requiring the process servers to follow professional ethics guidelines to show that NLFS had procedures adapted to avoid the error involved in this case. Godshall Decl. ¶ 35, Exs. 7, 8. NLFS also offers that Godshall reviewed process servicer returns every week to flag rates of success that were too high. Godshall Decl. ¶¶ 60-64.

Plaintiffs cross-move for summary judgment on the bona fide error defense and argue that the policies fail to address the filing of false proofs of service.[1] Pl. Reply at 8. Plaintiffs highlight that NLFS does not implement procedures such as GPS monitoring of the process servicers and, during the period at issue in this case, NLFS did not require time-stamped photographs or video of the actual service of documents. Godshall Depo. at 62:14-18, 62:19-25. Plaintiffs also point out that although Godshall represented in her declaration that Godshall reviews the process servicer returns every week, in her deposition, Godshall indicated that the returns were reviewed only by NLFS clerks as the clerks entered the information from the returns into the proof of service forms. Godshall Depo. at 65:14-24.

The Court finds that NLFS not only has failed to demonstrate that summary judgment in NLFS's favor is appropriate on its late-asserted bona fide error defense but also that NLFS has not raised a triable issue of fact regarding the defense. NLFS's policies to hire only licensed and bonded process servers and requiring the process servers to follow NLFS's guidelines speak to general quality control but not to avoiding entry of false information in a proof of service. The weekly reviews and target percentages for successful process service that Godshall describes in her declaration may serve to flag NLFS process servers who, over time, have falsified the service of process, but these procedures do not address the accuracy of the information entered on a specific proof of service form. Even if the weekly reviews were sufficient to ensure that the service of process was properly executed, Godshall's deposition testimony suggests that NLFS clerks in fact

---

[1] Plaintiffs also argue that NLFS waived the bona fide error defense. Pl. Reply at 8. The Court explained above that this argument is unavailing in the absence of a claim of prejudice by Plaintiffs. The Court thus considers the defense.

Case No.: 12-CV-03578-LHK
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO AMEND

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

are the only people reviewing the process service information and do so only as the clerks enter the information. NLFS has not explained by what objective criteria NLFS clerks could spot inaccurate or false services of process when evaluating individual service of process returns.

Because the evidence NLFS presents does not support the bona fide error defense and in fact raises no triable issue of fact, the Court finds that summary judgment against NLFS on the bona fide error defense is warranted. NLFS's motion for summary judgment on the bona fide error defense is DENIED, and Plaintiffs' cross-motion is GRANTED.

### B. Plaintiffs' Motion for Summary Judgment

Plaintiffs cross-move for summary judgment on the FDCPA, RFDCPA, and Section 17200 claims. The Court considers each in turn.

#### 1. FDCPA

"In order to state a claim under the FDCPA, a plaintiff must show: 1) that he is a consumer; 2) that the debt arises out of a transaction entered into for personal purposes; 3) that the defendant is a debt collector; and 4) that the defendant violated one of the provisions of the FDCPA." *Freeman*, 827 F. Supp. 2d at 1071.

Plaintiffs assert that NLFS "manufactured and sold" false proofs of service to debt collectors with the goal of obtaining default judgments against the debtors and preventing the debtors from contesting the state court suit. Compl. ¶ 104. In support of this contention, Plaintiffs allege that NLFS "knowingly promoted" its process servers to engage in false reports of service through its fee payment systems. Compl. ¶¶ 84-86. Plaintiffs argue that NLFS engaged in this conduct with the intent of coercing debtors such as Plaintiffs into paying their debts in violation of the FDCPA. Although not explicit in the complaint, Plaintiffs also assert in opposition to Defendants' motion for summary judgment that NLFS is vicariously liable for Railey's actions. Pl. Opp. at 10.

NLFS challenges Plaintiffs' ability to satisfy the elements of their FDCPA claim, specifically (1) that Long and Isa are judicially estopped from claiming to have a debt based on their representations in the state court proceedings; (2) that NLFS is a "debt collector" as defined

17

by the FDCPA because NLFS is exempt under the "process servicer" exemption; and (3) that NLFS is entitled to the bona fide error defense available under the FDCPA.

As to the bona fide error defense, the Court has already explained why summary judgment in Plaintiffs' favor is appropriate on NLFS's assertion of this defense. The Court does not address that issue further. The Court instead turns to the elements of Plaintiffs' FDCPA claim and NLFS's challenges to those elements. The Court begins with the first two elements, specifically whether Plaintiffs are "consumers" under the FDCPA and whether Plaintiffs' debt was for personal purposes.

### a.   Whether Plaintiffs are "Consumers" under the FDCPA and Whether the Debt was for Personal Purposes

The FDCPA defines both "consumer" and "debt." 15 U.S.C. § 1692a(3), (5). A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" is:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

The Court begins with the issue of whether Plaintiffs qualify as "consumers" under the FDCPA. The parties do not dispute that Plaintiffs are "natural persons." To support that Plaintiffs are "consumers" as defined by the FDCPA, Plaintiffs offer evidence that state court proceedings were initiated against each of them for failure to pay credit card debt. Long Decl. ¶ 5; Isa Decl. ¶ 5; Spies Decl. ¶ 5; *see also* Compl. Exs. 1, 2, 3. Long even offers a tentative ruling from the state court regarding the set aside of his default judgment as further proof that there was a debt collection proceeding against him. ECF 50-9.

Plaintiffs offer the same evidence to support that the debt for which litigation against Plaintiffs was initiated meets the FDCPA's definition. Long, Spies, and Isa each declare that their respective debts arose from credit card debt incurred for personal purposes. Long Decl. ¶ 5; Isa Decl. ¶ 5; Spies Decl. ¶ 5; *see also* Compl. Exs. 1, 2, 3.

18

NLFS responds that Long and Isa should be judicially estopped from asserting that Long and Isa incurred any consumer debt because of representations that Long and Isa made in their respective state court cases and the subsequent settlement agreements.  In the state court proceedings, Main Street Acquisitions ("MSA") sought to collect unpaid debts from Isa and Long.  Isa and Long each filed cross-complaints against MSA, alleging in part violations of the FDCPA.  In Isa's and Long's respective cross-complaints against MSA, Isa and Long each denied owing MSA any debt.  ECF No. 62-8 (Isa Cross-Compl.) ¶ 15; ECF No. 62-10 (Long Cross-Compl.) ¶ 14.  Isa and Long, however, both asserted in their respective state court cross-complaints that Isa and Long each were *alleged* to owe consumer debts.  Isa Cross-Compl. ¶ 10; Long Cross-Compl. ¶ 10.

Isa and Long each subsequently settled with MSA.  Kennard Decl. Exs. 2, 4.  In Isa's settlement agreement, MSA agreed to pay Isa to resolve the dispute, and the parties agreed not to characterize the settlement amount as "forgiveness of debt" so as to avoid MSA having to report to the Internal Revenue Service the settlement amount as income.  Kennard Decl. Ex. 4.  Long likewise settled with MSA, and MSA similarly agreed not to characterize the settlement amount as "forgiveness of debt" to avoid MSA reporting the income to the Internal Revenue Service.  Kennard Decl. Ex. 2.  Robert Scott Kennard ("Kennard"), MSA's lawyer in the state court cases against Long and Isa, states that the settlement agreements with Long and Isa included releases of MSA's claims against Long and Isa for their respective unpaid debts.  Kennard Decl. ¶¶ 5, 11.

In the complaint before this Court, Isa, Long, and Spies state that they were "alleged to have incurred various financial obligations, namely consumer credit accounts," from Capital One, Inc. and other "unknown creditors."  Compl. ¶ 48.  In Isa's declaration offered in support of Plaintiffs' motion for summary judgment, Isa states that he "incurred a financial obligation to HSBC Card Services, Inc., on a credit card account."  Isa Decl. ¶ 4.  Isa further states that when he was "unable to pay the credit card account, HSBC Card Services, Inc., assigned the account to [MSA] for collection."  *Id.*  In Long's declaration, Long similarly states that he "incurred a financial obligation to HSBC Card Services, Inc., on a credit card account," and that once Long could no longer pay the credit card account, "HSBC Card Services, Inc., assigned the account to [MSA] for collection."  Long Decl. ¶ 4.

19

United States District Court
For the Northern District of California

NLFS asserts that Long and Isa should be judicially estopped from claiming to have incurred any debt given Long's and Isa's denials that Long and Isa owed any debts in their respective state court proceedings.  NLFS further contends that Long and Isa benefitted from not characterizing their respective settlements as debt forgiveness.  NLFS argues that Long and Isa cannot now claim that Long and Isa incurred debts given that Long and Isa agreed that the settlements with MSA were not debt forgiveness.

Plaintiffs respond with two arguments.  Plaintiffs first argue that even if Long and Isa denied owing any debt, Long and Isa still qualify as "consumers" under the FDCPA because the FDCPA's definition includes natural persons "allegedly obligated" to pay any debt.  Pointing out that by its plain language the FDCPA does not require that a natural person in fact have incurred a debt, Plaintiffs insist that Long's and Isa's denials in the state court cases are not inconsistent with Long's and Isa's position in this Court that Long and Isa are "consumers" as defined by the FDCPA.  Plaintiffs further argue that Long's and Isa's positions in the state court cases and in this Court are not inconsistent.  Plaintiffs assert that Long's and Isa's denials of debt owed to MSA does not equate to a denial that Long and Isa owed *any* debt.  Plaintiffs offer a variety of reasons why Long and Isa would deny owing debt to MSA and yet still declare before this Court that Long and Isa incurred personal debt.

The Court addresses NLFS's judicial estoppel argument first before discussing whether Plaintiffs have established the first two elements of their FDCPA claims.

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."  *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).  "[O]btaining a favorable settlement is equivalent to winning a judgment for purposes of applying judicial estoppel."  *Id.* at 604-05.  "[T]he doctrine of judicial estoppel is not confined to inconsistent positions taken in the same litigation."  *Id.* at 605.  Application of judicial estoppel is within the Court's discretion.  *Id.* at 600.

The Court is not persuaded that judicial estoppel should be applied to Long and Isa to preclude Long and Isa from asserting that they incurred personal debt in this case.  Long's and

20

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Isa's settlements of their FDCPA and RFDCPA claims against MSA and MSA's collection claims again Long and Isa are not incompatible with Long's and Isa's current contentions that they incurred personal debt from HSBC Card Services, Inc. The settlement agreements were the result of the parties' bargaining to resolve their respective lawsuits. The parties' agreement not to characterize MSA's payments to Long and Isa as debt forgiveness in the settlement agreements was motivated by a desire to avoid reporting the settlement amounts as income to the Internal Revenue Service.

Moreover, the Court further finds that even if judicial estoppel was warranted to preclude Long and Isa from asserting that Long and Isa had incurred personal debt, Long and Isa would still be able to satisfy the first two elements of their FDCPA claims. As stated above, the FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Although the Ninth Circuit has not provided guidance regarding the breadth of the phrase "allegedly obligated," the Eighth Circuit recently held that the "allegedly obligated" language in the FDCPA extends the Act's protections to persons who have been mistakenly contacted by debt collectors to pay an obligation. *Dunham v. Portfolio Recovery Assoc., LLC*, 663 F.3d 997, 1001-02 (8th Cir. 2011). In *Dunham*, the defendant contacted the plaintiff who shared the same name as the person who in fact owed a debt to the defendant. *Id.* at 1002. The defendant argued that because the defendant had approached the wrong plaintiff, the defendant had not "alleged" that the plaintiff was obligated to pay the debt. *Id.* The Eighth Circuit disagreed, noting that under any definition of "alleged," the defendant's letters demanding payment from the plaintiff were "allegations," even if mistaken, that the plaintiff was obligated to pay the debt. *Id.* The Eighth Circuit concluded that a mistaken allegation nevertheless served as an allegation that invoked the protections of the FDCPA. *Id.* at 1002.

The Court also finds the Sixth Circuit's decision in *Bridge v. Ocwen Fed. Bank, FSB* instructive. 681 F.3d 355 (6th Cir. 2012). In *Bridge*, the Sixth Circuit addressed whether a defendant to a FDCPA claim could claim that the defendant's mistake about whether the plaintiff was in default when the defendant attempted to collect from the plaintiff absolved the defendant from liability under the FDCPA. *Id.* at 361. The Sixth Circuit highlighted that the FDCPA

21

employs "alleged" or "allegedly" when defining "consumers," "debt," and "debt collector," leading the Sixth Circuit to conclude "[t]hroughout the FDCPA[,] coverage is based on upon actual or merely alleged debt." *Id.* at 361 (citing 15 U.S.C. 1692a(3), (5), (6)).  The Sixth Circuit further noted Congress's intent that the FDCPA "regulate collection activities based on either 'mistaken identity or mistaken facts.'" *Id.* (quoting H.R. Rep. No. 131, at 8).  The Sixth Circuit concluded that a defendant's error regarding whether a plaintiff was in default did not dissolve FDCPA protection.  *Id.* at 362.

Two courts in this circuit have likewise held that the FDCPA applies to protect plaintiffs who deny that they owe the debt that defendants have sought from them.  In *Fausto v. Credigy Services, Corp.*, the defendant argued that because the plaintiff had testified to paying off the debt that the defendant had attempted to collect, the plaintiff did not have a "debt" as defined by the FDCPA.  598 F. Supp. 2d 1049, 1053 (N.D. Cal. 2009).  Looking to the definition of "debt" under the FDCPA, the *Fausto* Court held that the FDCPA "does not require that the debt be actual and extant at the time of the attempted collection." *Id.*  In *Gonzalez v. Law Firm of Sam Chandra APC*, the defendant argued that the plaintiff was not the person who in fact owed debt to the defendant, even though the defendant sent "dunning" letters and garnished her wages to recover the debt.  No. 13-CV-0097-TOR, 2013 WL 4758944, at *3 (E.D. Wash. Sept. 4, 2013).  Finding *Dunham*'s reasoning persuasive, the *Gonzalez* court held that the plaintiff's claim that she did not owe a debt and the defendant's admission that it had made a mistake did not preclude a finding of liability under the FDCPA.  *Id.*

The Court finds the reasoning of these courts persuasive and agrees that the FDCPA applies to plaintiffs who have denied owing the debt at issue and to plaintiffs that defendants assert were mistakenly contacted.  In this case, NLFS does not dispute that state court actions were initiated against Long and Isa for the purposes of collecting unpaid personal credit card debt.  NLFS further does not dispute that NLFS filed proofs of service with the state court stating that Long and Isa had been served the complaints filed in the state court actions.  The evidence before the Court supports both of those contentions.  Long and Isa therefore have shown that, at a minimum, Long and Isa were alleged to have been obligated to pay a debt such that Long and Isa meet the FDCPA's

22

Case No.: 12-CV-03578-LHK
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO AMEND

definition of "consumer."  Long and Isa furthermore have shown that, at a minimum, the alleged

debt was for personal purposes so as to meet the FDCPA's definition of "debt."  Accordingly, even

if judicial estoppel were warranted to preclude Long and Isa from asserting any actual debt, Long

and Isa nevertheless satisfy the first two elements of an FDCPA claim.

NLFS does not dispute that Long, Isa, and Spies were subject to state court actions to

collect debts incurred for personal purposes.  The initiation of those state court actions supports

Plaintiffs' arguments that Plaintiffs were "consumers" as defined under the FDCPA and that the

debts are "debt" as defined by the FDCPA.  Because the undisputed evidence before the Court

supports that Plaintiffs were alleged to have owed a debt incurred for personal purposes, the Court

finds that summary judgment in Plaintiffs' favor is warranted on the first two elements of

Plaintiffs' FDCPA claim, specifically that Plaintiffs are consumers as defined by the FDCPA and

that Plaintiffs incurred "debt" as defined by the FDCPA.

### b.      Whether NLFS is a Debt Collector

NLFS argues that its activities fall within the process server exemption to the FDCPA's

debt collector definition.  Plaintiffs counter that the filing of false proofs of service in the state

court proceedings dissolves the protection of the process server exception and renders NLFS a debt

collector as defined under the statute.  The Court begins with a brief overview of the law governing

"debt collectors" under the FDCPA before turning to the merits' of NLFS's argument.

The FDCPA defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any
> business the principal purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or indirectly, debts owed or due or
> asserted to be owed or due another.

15 U.S.C. § 1692a(6).  The term is not limited to formal debt collection agencies.  *See Heintz v.

Jenkins*, 514 U.S. 291, 292, 299 (1995) (holding that lawyers who engage in debt collection

through litigation can qualify as "debt collectors").  Congress intended the scope of the Act "to

cover all third persons who regularly collect debts for others."  S. Rep. No. 95–382, 95th Cong. 1st

Sess. (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697–98 (stating that "[t]he requirement that

debt collection be done 'regularly' ... exclude[s] a person who collects debt for another in an isolated instance, but ... include [s] those who collect [debts] for others in the regular course of business."). The language and the legislative history of the FDCPA suggest that an entity qualifies as a "debt collector" if it regularly performs debt collection services, regardless of what percentage of its services relate to debt collection. *See* S. Rep. No. 95–382, at 3; *see also Romine v. Diversified Collection Servs., Inc.,* 155 F.3d 1142, 1146 (9th Cir. 1998) ("Had Congress intended to limit the Act to licensed or registered collection agencies, it would have confined the statutory language to businesses for which debt collection is the 'principal purpose.'").

The FDCPA exempts from the definition of debt collector "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D). The exception is not absolute. Courts have held that the process server exception does not apply in cases where the plaintiffs can show that the defendants were not bona fide process servers. *See Freeman*, 827 F. Supp. 2d at 1073; *Flamm v. Sarner & Associates, P.C.*, No. 02–4302, 2002 WL 31618443, at *5 (E.D. Pa. Nov. 6, 2002); *Holmes v. Elec. Document Processing,,* --- F. Supp. 2d ---, 2013 WL 4456544 (N.D. Cal. Aug. 15, 2013). Specifically, when process servers file a false service of process, their actions "take[]them beyond their role as process servers and render[] them ineligible for the [process server] exception." *Spiegel v. Judicial Atty. Servs.*, No. 09-7163, 2011 WL 382809, at *1 (N.D. Ill. Feb. 1, 2011).

In so holding, the courts have found a link between the process server exception and the requirement that plaintiffs show an abusive or harassing practice. When a process server files a false service of process, he can no longer avail himself of the process server exception. The false service of process also results in a deception of the court and the potential entry of default judgment against the debtor, which courts have considered an abusive practice under the FDCPA. *See Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413, 424 (S.D.N.Y. 2010); *see also Freeman*, 827 F. Supp. 2d at 1075–76 (collecting authorities holding that a false service of process in a debt collection case is abusive under the FDCPA).

In essence, a false service of process can satisfy the last two elements for stating a cause of action under the FDCPA. Thus, a false service of process used in the process of collecting a debt

Case No.: 12-CV-03578-LHK
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO AMEND

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

can dissolve the FDCPA's "process servicer" exemption and thereby render the process servicer a debt collector, which is the third element of an FDCPA claim.  The false service of process also qualifies as a violation of the FDCPA, which is the fourth and final element of an FDCPA claim.

With this framework in mind, the Court turns now to NLFS's and Plaintiffs' arguments regarding whether NLFS is a "debt collector."  Plaintiffs assert that the process server exception does not apply to NLFS because NLFS created and signed proofs of service stating Plaintiffs had been served, Plaintiffs in fact were not served, and NLFS has not shown mistake or another available defense.  Pl. Reply at 7.

In support, Plaintiffs offer evidence that Railey failed to serve Long, Spies, or Isa.  For example, the Isa proof of service states that Isa was personally served, and that the recipient was a "Black male, 35 years old with black hair and brown eyes, 5'9", 180lbs."  Compl. Ex. 2.  Isa states that he in fact is an East Indian man in his seventies and has not lived at the address listed on the proof of service since August 1, 2010.  Isa Decl. ¶¶ 7, 8, Ex. A.  Isa also provides a copy of his drivers' license, which states that he was born on January 22, 1943.  Isa Decl. Ex. A.  The Spies proof of service states service was delivered on July 31, 2011 at an address that Spies states that he had not lived at for over six months at the time of the alleged service.  Spies Decl. ¶¶ 7-8.  Spies also asserts that the property referenced on the proof of service was turned over to the Santa Clara County Park District in December 2010.  *Id.* at ¶ 9.  Long offers the state court's finding that Long had not been served when the state court tentatively ruled that it would set aside the default judgment entered against Long.  ECF No. 50-9.  Long also states that he was never served.  Long Decl. ¶ 7.

In response, NLFS points to an undated declaration from Railey in which Railey states that Railey in fact served Long.  Godshall Decl. Ex. 17.  NLFS does not address the evidence that Plaintiffs offer regarding Isa or Spies.  NLFS instead challenges the reasoning that a false service of process can serve both to show that the process servicer exemption does not apply and that the FDCPA was violated.  Def. Opp. at 14.  NLFS's argument is unavailing, however, because as explained above, multiple courts have found that "sewer service" serves both to strip a process

25

servicer of the protection of the process servicer exception and to establish liability for a violation of the FDCPA. *See Freeman*, 827 F. Supp. 2d at 1075–76 (listing cases).

NLFS also asserts that NLFS only filled out and filed proofs of service and relied on Railey's representations regarding the accuracy of the service of process. Def. Opp. at 13. NLFS's assertion suggests that NLFS is not liable for Railey's actions. This suggestion, however, echoes NLFS's vicarious liability argument in NLFS's motion for summary judgment. As explained in detail above, the Court has determined that a factual question regarding NLFS's liability for Railey exists. That factual question, however, precludes a finding of summary judgment in Plaintiffs' favor regarding NLFS's status as a debt collector.

The Court further adds that genuine issues of material fact exist with regards to whether NLFS in fact filed false proofs of service. Although NLFS failed to address this issue in its briefs, the Court notes that NLFS enjoys the presumption of valid service. According to that presumption, "[a] signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'" *S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007) (quoting *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)). Plaintiffs thus must meet a higher burden to rebut that presumption.

As explained in detail above, Plaintiffs offer more than just declarations stating that they were not served. Isa offers the disparity in his appearance with the appearance described on the proof of service. Spies states not only that Spies was not served but that no one lived at the residence where Railey claimed to have effectuated service at the time of the purported service. Spies Decl. ¶ 9; ECF No. 50 Exs. B, C. Long points to the state court tentative ruling that he had not been served. ECF No. 50-9. This evidence suggests that Plaintiffs can overcome the higher burden to rebut the presumption of valid service.

The Court cannot say, however, that the evidence requires an inference that Plaintiffs were not served, especially given the high standard Plaintiffs must meet. Railey, for example, stated in a declaration that he served Long. Godshall Decl. Ex. 17. The proofs of service also serve as evidence suggesting that Plaintiffs in fact were served. Ultimately, the conflicts in the evidence

26

must be resolved by credibility determinations by the finders of fact.  A triable issue of fact thus

exists regarding whether Plaintiffs were served.

### c.      Whether NLFS Violated the FDCPA

Plaintiffs argue that NLFS violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(1), and

1692f and proffer three factual bases from which to find NLFS violated the FDCPA:

> (1)      manufacturing and selling fraudulent Proofs of Service of Summons that
> falsely stated that Plaintiffs were personally served with a Summons and
> Complaint when in fact they were not;
>
> (2)      manufacturing and selling fraudulent, deceptive, and misleading statements
> and documents intended for use in the collection of consumer debts; and
>
> (3)      aiding, abetting and ratifying the fraud, perjury, breach of official duty and
> other wrongful acts committed by the other Defendants in this case.

### i.      Manufacture and Sale of Fraudulent Proofs of Service of Summons Regarding Plaintiffs

Plaintiffs base this argument on the alleged failure by NLFS to serve Plaintiffs with

process despite NLFS filing in state court forms stating that Plaintiffs had been served.

The Court addressed above why genuine issues of material fact exist with regards to

Plaintiffs' claim.  For the reasons provided above, the Court DENIES Plaintiffs' motion for

summary judgment on these grounds.

### ii.      Manufacture and Sale of Fraudulent, Deceptive, and Misleading Statements and Documents Intended for Use in the Collection of Consumer Debts

Plaintiffs further assert that NLFS's business model encourages falsified reports of process

of service.  Pl. Mot. at 15.  Plaintiffs point to the fact that NLFS has debt collectors as clients and

that Godshall is a member of the California Collectors Bar Association and other organizations

relating to debt collection.  Godshall Depo. 36:1-11, 42:15-17, 197:20-198:2.  Plaintiffs also

highlight that NLFS does not perform independent background checks on its process servers

(Godshall Depo. at 50:7-23), that NLFS does not conduct training of its process servers (Godshall

Depo. at 52:10-13; Ektefaie Depo. at 70:13-15), that NLFS does not have procedures in place to

27

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

verify the accuracy of the process servers' activities (Godshall Depo. at 62:8-18), and that if the return is accused as false, NLFS seeks a declaration from the process server stating that the server in fact made the delivery (Godshall Depo.110:2-12). Plaintiffs highlight that Railey has been suspended but not terminated from Nationwide or NLFS (Ektefaie Depo. at 180:14-22) and that Railey may be rehired in the future (Ektefaie Depo. at 91:3-5, 9).

NLFS counters that this evidence fails to support that NLFS has a business model that promotes or encourages falsified reports of process of service. NLFS points to its guidelines with which process servers are required to abide. Godshall Decl. ¶ 35. NLFS also highlights that NLFS pays the same fees whether or not process servers successfully complete the service. Godshall Decl. ¶¶ 50-53. NLFS underscores that it has a quality control check in place through weekly reviews of the process servers' work. Godshall Decl. ¶ 59.

Taking all inferences in favor of NLFS as is required when considering a motion for summary judgment, Plaintiffs have failed to show that there is no triable issue of fact with regard to NLFS's business practices. Plaintiffs infer that NLFS's purported lack of supervision not just promoted falsification of proofs of service but in fact was part of a larger scheme to harass debtors into paying their obligations. It is not clear on this record, however, that NLFS failed to adequately supervise the process servers. Equally plausible from this record is an inference that NLFS gave the process servicers guidelines and had mechanisms in place to ensure quality control. Any failure to catch a misrepresentation may have been only an error, not a part of a larger scheme. Plaintiffs accordingly have not shown that summary judgment in their favor is warranted. The motion is DENIED as to Plaintiffs' claim that NLFS engages in a scheme that encourages and condones the falsification of proofs of service.

### iii.    Aiding, Abetting and Ratifying the Fraud, Perjury, Breach of Official Duty and Other Wrongful Acts Committed By Railey

Plaintiffs do not provide any argument regarding this basis for finding a violation of the FDCPA. To the extent that Plaintiffs seek to assert vicarious liability as grounds for finding NLFS liable for Railey's actions, the Court already addressed vicarious liability and

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

adopts that reasoning here.  The Court adds only that based on the evidence offered by both NLFS and Plaintiffs with regards to NLFS's control of Railey, a genuine issue of material fact remains.  The evidence the parties offer lends itself to multiple inferences, either that NLFS controlled Railey through its quality control measures and choice of assignments or that NLFS did not control Railey because it had no direct oversight regarding his service of process.  Plaintiffs' motion for summary judgment on these grounds is DENIED.

### 2.    RFDCPA

Like the FDCPA, the RFDCPA requires the Plaintiff to prove four elements: (1) the plaintiff is a "debtor," (2) the debt at issue is a "consumer debt," (3) the defendant is a "debt collector," and (4) that the defendant violated one of the liability provisions of the RFDCPA.

With regard to the first two elements, a "debtor" under the RFDCPA is "a natural person from whom a debt collector seeks to collect a consumer debt which is due and owing or alleged to be due and owing from such person."  Cal. Civ. Code § 1788.2(h).  The RFDCPA defines "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction."  Cal. Civ. Code § 1788.2(f).  The Court explained above that Plaintiffs have shown sufficient evidence that Long, Isa, and Spies are debtors allegedly obligated to pay consumer debt.  Accordingly, the Court GRANTS summary judgment on these two elements.

With regard to the third element, the RFDCPA defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of . . . others, engages in debt collection."  Cal. Civ. Code § 1788.2(c).  "'Debt collection' means any act or practice in connection with the collection of consumer debts." Cal. Civ. Code § 1788.2(b).  Notably, the definition of "debt collector" is not the same as it is under the FDCPA.  While the RFDCPA does incorporate some provisions from the FDCPA, it does not incorporate the definition of "debt collector" under Section 1692a(6).  *See* Cal. Civ. Code § 1788.17 (incorporating "Sections 1692b to 1692j"); *see also Gaudin v. Saxon Mortgage Servs., Inc.*, — F.R.D. —, 2013 WL 4029043, at *10 (noting the definition of debt collector is broader in the RFDCPA than the FDCPA).

1    The Court must therefore ascertain the meaning of "debt collector" under the RFDCPA.

2    Basic canons of statutory interpretation require "look[ing] to the statute's words [to] give them

3    their usual and ordinary meaning." *Huy Thanh Vo v. Nelson & Kennard*, CIV. S-12-2537 LKK,

4    2013 WL 1091207, at *10 (E.D. Cal. Mar. 15, 2013). Here, the phrase "any act or practice in

5    connection with the collection of consumer debt" is broad enough to encompass process servers

6    because delivering a summons for a debt collection suit is a critical step in the collection of a

7    consumer debt. Because NLFS's business practice in serving process in debt collection cases is an

8    "act or practice in connection with the collection of consumer debt," the Court GRANTS Plaintiff's

9    motion for summary judgment as to whether Defendants are "debt collector[s]" under the

10   RFDCPA.

11   For the fourth element, Plaintiffs argue that NLFS violated several provisions of the

12   RFDCPA:

13        (1)   Cal. Civ. Code § 1788.13(i) (prohibiting "false representation of the true nature of

14              the business or services being rendered by the debt collector");

15        (2)   Cal. Civ. Code § 1788.14(b) (prohibiting the collection or attempted collection

16              "from the debtor the whole or any part of the debt collector's fee or charge for
                services rendered, or other expense incurred by the debt collector in the collection of

17              the consumer debt, except as permitted by law");

18        (3)   Cal. Civ. Code § 1788.15(a) (prohibiting a debt collector from collecting or

19              attempting to collect "a consumer debt by means of judicial proceedings when the
                debt collector knows that service of process, where essential to jurisdiction over the

20              debtor or his property, has not been legally effected"); and

21        (4)   Cal. Civ. Code § 1788.17 (requiring that debt collectors comply with the FDCPA).

22   As with the RFDCPA, the Court finds that Plaintiffs have not established that no triable

23   issue of fact remains with regards to these claims. The Court explained in detail above and repeats

24   here only for clarity that triable issues of fact remain at least as to whether Plaintiffs were in fact

25   served. Resolution of that factual dispute implicates Plaintiffs' claims of violations of Sections

26   1788.13(i), Section 1788.15(a), and Section 1788.17. The claimed violation of each of those

27   sections turns on whether NLFS and Railey in fact failed to serve process and actually

28   misrepresented the service of process to the state courts. As to Section 1788.14(b), Plaintiffs point

30

to no evidence that Plaintiffs were required to pay Defendants' process server fee in the state court proceedings.  Accordingly, summary judgment in Plaintiffs' favor is DENIED on Plaintiffs' RFDCPA claims.

### 3.    Cal. Bus. & Prof. Code § 17200

California's Unfair Competition Law ("UCL") prohibits business practices that are: (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  Each "prong" of Section 17200 provides a separate and distinct theory of liability.  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  In general, a claim under brought under the "unlawful" prong of the UCL must be based on some underlying predicate act involving independent wrongdoing. *See Cel–Tech Communications v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); *see also Herskowitz v. Apple Inc.*, — F. Supp. 2d —, 2013 WL 1615867, at *11 (N.D. Cal. Apr. 15, 2013) (dismissing a UCL claim because "no violation of law serve[d] as the basis for the unlawful prong of [plaintiff's] UCL claim.").  Usually, this involves the violation of some other statute.

Plaintiffs' UCL claim relies on a predicate unlawful act, specifically violations of the FDCPA, the RFDCPA, and Cal. Code Civ. P. § 417.10 (governing service of process in California).  For the reasons discussed in the preceding subsections, Plaintiffs have not demonstrated that they are entitled to summary judgment on the allegedly unlawful predicate acts— violation of the FDCPA or RFDCPA or Section 417.10—because genuine issues of material fact persist regarding whether Plaintiffs were served and whether NLFS filed false proofs of service.  The success of Plaintiffs' UCL claim depends on the success of these predicate claims.  Because Plaintiffs have not yet succeeded on demonstrating liability under the predicate claims as a matter of law, Plaintiffs do not succeed on the UCL claim as a matter of law.  Accordingly, the Court DENIES summary judgment.

Because the Court has found no claim on which Plaintiffs succeed on summary judgment, the Court does not address Plaintiffs' request for findings of damages.

## V.    CONCLUSION

The Court DENIES Defendants' motion for leave to file an amended answer.  The Court GRANTS Defendants' summary judgment motion as to Nationwide but DENIES the motion with

31

respect to vicarious liability and the bona fide error defense.  The Court GRANTS Plaintiffs'

summary judgment motion as to NLFS's bona fide error defense and as to whether Plaintiffs are

consumers alleged to be obligated to pay personal debt under the FDCPA and to pay consumer

debt under the RFDCPA.  The Court DENIES Plaintiffs' summary judgment motion in all other

respects.

**IT IS SO ORDERED.**

Dated: September 17, 2013

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No.: 12-CV-03578-LHK
ORDER GRANTING-IN-PART MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO
AMEND