UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GRADY VERNON LONG, ISMAIL ISA, and WARREN JEREMIAH SPIES, <br><br> Plaintiffs, <br> v. <br><br> NATIONWIDE LEGAL FILE & SERVE, INC., a California Corporation; NATIONWIDE LEGAL, LLC, a Delaware limited liability company; CEASAR ERIC RAILEY, individually and in his official capacity; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 12-CV-03578-LHK <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS |

Before the Court is Plaintiffs Grady Vernon Long's, Ismail Isa's, and Warren Jeremiah Spies' (collectively, "Plaintiffs") Motion for Attorney's Fees and Costs following an action brought under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § § 1692 *et seq.* ECF No. 90. Plaintiff's counsel is Fred Schwinn and Raeon Roulston of Consumer Law Center, Inc, as well as the Center's law clerk, Matthew Salmonsen. *Id.* at 5. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for determination without oral argument. Accordingly, the hearing set for July 24, 2014, at 1:30 p.m. is VACATED. For the reasons discussed below, the Court hereby GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion.

I.     **BACKGROUND**

A.     **Facts**

This case arose out of Plaintiffs' allegations that Defendants engaged in "sewer service," a practice whereby a proof of service is filed in court stating that a party has been served when in reality no service has occurred. As a result of the falsified proof of service, default and default judgment are entered against the unaware party. Plaintiffs alleged that each of them was a victim of Defendants' "sewer service." Plaintiffs were each alleged debtors against whom the law firm Nelson & Kennard filed debt collection actions on behalf of various clients. *See* ECF No. 1 ("Compl.") Exs. 1, 2, 3. In each case, Nelson & Kennard used the services of Defendant Nationwide Legal File & Serve, Inc. ("NLFS") to serve process on Plaintiffs. *See* Compl. Exs. 1, 2, 3. NLFS, in turn, allegedly relied on the services of Railey, a registered process server, to serve Plaintiffs. ECF No. 52-2 (NLFS's Resp. to Pl. First Set of Interr.) at 10-11; Compl. Exs. 1, 2, 3.

Nelson & Kennard filed a debt collection action against Plaintiff Long for consumer debt originating from an HSBC credit card. ECF No. 50-1 (Long Decl.) ¶¶ 4-5; Kennard Decl. ¶¶ 2, 3. On July 11, 2011, Railey completed and signed a proof of service of summons attesting that he had personally served Long. ECF No. 50-8. Long stated he never received service, personally or otherwise. Long Decl. ¶ 6. Because Long had no notice of the action and thus failed to appear, default judgment was entered against him. *Id.* ¶ 5. Long only found out about the existence of the action against him through a lien notice received in November 2011. *Id.* Judge Barbara Kronlund, sitting in the San Joaquin County Superior Court, issued a tentative ruling setting aside Long's default and default judgment and noting that evidence supported Long's statement that he had not been served. ECF No. 50-9.

On July 20, 2011, Railey completed and signed a proof of service of summons attesting that he had personally served Plaintiff Isa. ECF No. 50-10. The proof of service described Isa as "Black, Male, 35 Years Old, Black Hair, Brown Eyes, 5 Feet 9 Inches, 180 Pounds." *Id.* According to the copy of the driver's license that Isa submitted, Isa was 68 years old at the time of service and is East Indian. ECF No. 50-2 (Isa Decl.) Ex. A; Isa Decl. ¶ 8. Isa also stated he had not lived at the

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

address Railey noted on the proof of service for almost a year at the time of service. Isa Decl. ¶ 7. After Isa learned of the default judgment entered against him through an earnings withholding order, Isa retained an attorney and successfully challenged the proof of service. Isa Decl. ¶¶ 5, 10. Isa's default judgment was set aside. Isa Decl. ¶ 10.

On August 1, 2011, Railey completed and signed a proof of service of summons attesting that he successfully served Plaintiff Spies by substitute service. ECF No. 50-11. According to Spies, Spies never received service because since November 2010 Spies had not lived at the address referenced on Railey's completed proof of service document. ECF No. 50-4 (Spies Decl.) ¶¶ 8, 9. Spies stated that to the best of his knowledge, no one was living at the address where Railey purportedly served Spies at the time that Railey documented serving Spies. *Id.* ¶ 9. Spies first learned of the default judgment entered against him when an employee of Nelson & Kennard wrote him a letter stating that the firm had obtained a judgment against him. *Id.* ¶ 5.

Defendant NLFS is a California corporation that provides court filing and service of process services. ECF No. 55 (Godshall Decl.) ¶ 25-27. NLFS clients include law firms specializing in consumer debt collection. *Id.* NLFS hires registered process servers as independent contractors, and entrusts them with serving process in accordance with the specifications of NLFS's clients. *Id.* ¶¶ 28, 37. NLFS's clients supply instructions, the summons, the defendant's address, and the complaint. *Id.* ¶ 37. NLFS files the lawsuit and uses its contracted process servers to attempt to serve process in accordance with the client's instructions. *Id.*

Defendant Nationwide Legal, LLC ("Nationwide Legal") provides law firms with "attorney support services" including filing legal documents, service of process, messenger services, and assistance in document production. ECF No. 54 (Ektefaie Decl.) ¶ 9.

At the summary judgment stage of this litigation, Nationwide and NLFS argued they operate separately. Ektefaie Decl. ¶¶ 24-38; Godshall Decl. ¶¶ 7-24. They cited evidence that the entities pay separate rent for separate office space, maintain separate records for accounting, have separate insurance, and have separate employees. Godshall Decl. ¶¶ 11-14. The funds and incomes of the two businesses have never been commingled. *Id.* ¶¶ 14-15. Nationwide and NLFS do not

3

United States District Court
For the Northern District of California

share clients. *Id.* ¶ 10. The entities do have some ties. For example, Davoodi and Ekhaven, who co-own Nationwide, are founders with Godshall of NLFS. Godshall Decl. ¶ 6; Ektefaie Decl. ¶ 8, 23. Nationwide's general manager and chief administrative officer, Mehdi Ektefaie, serves as an officer with NLFS, advises NLFS management, assists with NLFS human resources decisions, and assisted with the licensure process for NLFS. Ektefaie Decl. ¶¶ 35-37. Ektefaei has never been on payroll at NLFS. *Id.* ¶ 35. Nationwide and NLFS at times share legal advice regarding service of process or human resources, and the companies pay the resulting bills in proportion to the services rendered. *Id.* ¶ 34. The businesses share an address, though they do not share office space. *Id.* ¶ 26.

In February 2011, Railey signed an independent contractor agreement with Nationwide. Ektefaie Decl. Ex. 7. Railey also was a process server for NLFS, serving in an independent contractor capacity. ECF No. 7 (Answer) at 13 ¶ 7; ECF No. 64 (Godshall Opp. Decl.) ¶ 35. Railey's assignments at NLFS included service on Plaintiffs Long, Isa, and Spies. Godshall Decl. ¶ 63; Compl. Exs. 1, 2, 3.

Based on these facts, Plaintiffs brought their complaint against NFLS, Nationwide Legal, and Railey, seeking relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.; the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civil Code § 1788 et seq; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. Compl. ¶¶ 90-133.

**B.      Procedural History**

On July 9, 2012, Plaintiffs filed a complaint against Railey, Nationwide Legal, and NLFS. ECF No. 1. On August 15, 2012, NLFS and Nationwide Legal filed their answer. ECF No. 7. On December 6, 2012, the Court entered default against Railey. ECF No. 21. Plaintiffs did not file a motion seeking entry of default judgment afterwards, but simply voluntarily dismissed Railey on October 15, 2013. ECF No. 86.

On July 25, 2013, Plaintiffs filed a motion for summary judgment, to which Defendants filed an opposition, and Plaintiffs filed a reply. ECF Nos. 50, 62-65, 68, and 69. On July 26, 2013, Defendants filed a motion for summary judgment, to which Plaintiffs filed an opposition, and

4

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES
AND COSTS

Defendants filed a reply. ECF Nos. 53-56, 67, and 71-74. On September 17, 2013, the Court granted in part and denied in part Plaintiffs' and Defendants' motions. ECF No. 79. The Court granted Defendants' motion with respect to Nationwide Legal's liability "[b]ecause Plaintiffs have not raised a triable issue of fact that Nationwide is directly liable for the actions of Railey or that Nationwide is an alter ego or joint venturer of NLFS," but denied the motion with respect to NFLS's arguments concerning whether it could be held vicariously liable for Railey's conduct, and the bona fide error defense. *Id.* at 12, 15, 17. The Court granted Plaintiffs' motion as to NLFS's bona fide error defense and as to whether Plaintiffs are "consumers" obligated to pay personal debt under the FDCPA. *Id.* at 23. The Court denied Plaintiffs' summary judgment motion in all other respects.

On September 26, 2013, Plaintiffs filed a notice of acceptance of an offer of judgment by NFLS pursuant to Federal Rule of Civil Procedure 68. ECF No. 81. Specifically, NLFS offered to allow judgment against it in favor of Plaintiffs in the amount of statutory damages totaling $6,000.00. *See id.*, Ex. 1 at 2. The offer stated, "Plaintiffs will also be awarded their court costs (including reasonable attorney's fees, as determined by the Court as provided by 15 U.S.C. §1692k), those costs and reasonable attorney's fees incurred to the date of this Offer of judgment." *Id.* On October 15, 2013, the Court entered judgment in favor of Plaintiffs and against NLFS. ECF No. 87. On October 21, 2013, the Court also entered judgment in favor of Nationwide Legal. ECF No. 89.

On October 29, 2013, Plaintiffs filed their Motion for Attorney's Fees and Costs and supporting declarations against NLFS. ECF No. 90 ("Mot."). On November 12, 2013, NLFS filed its Opposition and supporting declarations. ECF Nos. 93-95. On November 22, 2013, NFLS filed a "supplemental memorandum as to costs." ECF No. 99 ("Supp. Memo."). On December 10, 2013, Plaintiffs filed a reply. ECF No. 100 ("Reply").

## II.    LEGAL STANDARD

The Fair Debt Collection Practices Act ("FDCPA") directs a court to award attorney's fees to a prevailing consumer against the liable debt collector. 15 U.S.C. § 1692k(a)(3). The Ninth

5

Circuit has held that "the FDCPA's statutory language makes an award of fees mandatory." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). Courts in the Ninth Circuit calculate an award of attorney's fees under the FDCPA using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id*. "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).

A party seeking attorney's fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir.2006) (internal quotation marks omitted). Generally, "the relevant community is the forum in which the district court sits." *Camacho,* 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990).

"The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho*, 523 F.3d at 980 (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)). "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Thus, there is a strong presumption that the lodestar amount represents a reasonable fee and any adjustment of that figure is proper only in "rare and exceptional cases." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations omitted).

## III.    DISCUSSION

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES
AND COSTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs move the Court for an award of $59,832.50 in attorney's fees and $4,551.46 in costs, for a total of $64,383.96. Mot. at 6, 13; Reply at 19. To support this amount, Plaintiffs provide an itemized billing statement detailing the services rendered by their attorneys from November 2011 to October 2013; the hours worked in rendering those services, broken down by task; and the hourly rate billed by the attorney performing a particular task. *See* ECF No. 90-2 ("Invoice."). This invoice represents the work performed by two attorneys, Fred W. Schwinn ("Schwinn") and Raeon R. Roulston ("Roulston"), and one law clerk, Matthew C. Salmonsen ("Salmonsen") from November 2011 to October 2013. All are associated with the Consumer Law Center, Inc. The total attorney's fees requested by Plaintiffs ($59,832.50) also includes fees for the additional 11.5 hours Roulston claims he spent in reviewing NFLS's opposition, drafting the reply, and preparing for the upcoming hearing. Reply at 18-19; ECF No. 100-1 at ¶ 13. Plaintiffs also submitted an itemized bill as evidence of costs. ECF No. 90-2 at 20.

NFLS disputes the fees amount Plaintiffs should recover, arguing that only a maximum of $21,997.50 could possibly be granted and that in fact, only $6,000 in fees should be awarded. Opp'n at 15. Defendant also argues that only $590.56 costs should be awarded. Supp. Memo. at 5. Below, the Court concludes that Plaintiffs should be awarded $57,467.50 in attorney's fees and $1,285.41 in costs, for a total award of $58,752.91.

### A.    Attorney's Fees

#### 1.    Reasonableness of Hours

The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhardt*, 461 U.S. 424, 434 (1983); *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The district court may also exclude any hours that are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434. After the party seeking fees has come forward with its evidence supporting the time billed, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of

7

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397–98.

Here, Plaintiffs submit various declarations, as well as an itemized billing statement, noting that Schwinn expended 37.7 hours, Roulston expended 110.1 hours, and Salmonsen expended 36.5 hours in preparing for this case. ECF No. 90 at 5; ECF Nos. 90-1, 90-3, 90-4, 90-5. In their Reply brief and supplemental declaration by Roulston, Plaintiffs further note that Roulston spent an additional 11.5 hours reviewing Defendant's opposition and drafting the Reply and preparing for the hearing on this motion. Reply at 18-19; ECF No. 100-1. These sorts of declarations have been held by the Ninth Circuit to be "satisfactory evidence" of prevailing market rates for attorney's hourly rates. *Camacho,* 523 F.3d at 980. Thus, Plaintiffs' declarations satisfy their initial burden of producing evidence demonstrating the reasonableness of their requested fee. The burden thus shifts to Defendant to submit "evidence ... challenging the accuracy and reasonableness of the ... facts asserted by the prevailing party in its submitted affidavits." *Id.*

Defendant argues Plaintiffs' fees are "excessive" and "unreasonable" and that the Court should either reduce or eliminate them. *See generally* Opp'n. The Court reviews each of Defendant's sixteen objections in numbered order below to determine whether Defendant has met its burden to rebut the reasonableness of the hours claimed. *Camacho,* 523 F.3d at 980.

Before addressing Defendant's arguments, the Court notes that Defendant requests judicial notice of three exhibits. ECF No. 94-2 (Exhibit 1(A)); ECF No. 94-3 (Exhibit 1(B); ECF No. 94-4 (Exhibit 1(C)); ECF No. 94 (Request for Judicial Notice). NFLS has converted the Plaintiffs' Invoice into an exhibit for each individual biller: Exhibit 1(A) (Schwinn); Exhibit 1(B) (Roulston); Exhibit 1(C) (Salmonsen). NFLS has also numbered each biller's time entries within each exhibit. NFLS uses these exhibits as a citing system throughout its Opposition to alert the Court to which fee entry Defendant objects. While Plaintiffs do not indicate any opposition to the request for judicial notice, the Court denies the request because Defendant's exhibits contain other notations such as pen marks and thus the exhibits contain some information that is not "'generally known' under Rule 201(b)(1) or 'capable of accurate and ready determination by resort to sources whose

8

accuracy cannot be reasonably questioned' under Rule 201(b)(2)." *United States v. Ritchie,* 342 F.3d 903, 909 (9th Cir. 2003). Nonetheless, the Court utilizes Defendant's exhibits as a citation system throughout this Order, for purposes of identifying to which fee entry Defendant obects. This is because Plaintiff's Invoice does not number the fee entries. The Court now addresses each of Defendant's specific objections below.

(1) NFLS notes that this Court granted Nationwide Legal summary judgment, and subsequently entered judgment in Nationwide Legal's favor. Opp'n at 3 (citing ECF Nos. 79 & 89). Defendant then objects because Plaintiffs' fee request inappropriately includes "all fees for prosecution against" Nationwide Legal, not just against NFLS. *Id.* at 3, 6. Accordingly, NFLS argues that all of Plaintiffs' fee requests "at a minimum must be divided by fifty percent[.]" Opp'n at 1-2. NFLS appears to argue that because Plaintiff's claim against Nationwide Legal failed, Plaintiff may not recover fees from NFLS for any work done in connection with that claim, and that as a punitive measure for even requesting fees for work associated with Nationwide Legal, *all* of Plaintiffs' fee requests should be cut in half.[1]

Where a plaintiff attains only partial success throughout the court proceedings, the court must apply a two-part analysis. First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. *Hensley,* 461 U.S. at 434–35. The *Hensley* Court noted that "there is no certain method of determining when claims are 'related' or 'unrelated.'" *Id.* at 437 n.12. However, generally, related claims will involve "a common core of facts or will be based on related legal theories," while unrelated claims will be "distinctly

---

[1] Specifically, NFLS objects to the following entries in Exhibit 1(A): (1) #75 (deposition of Nationwide Legal), (2) #209 (Schwinn "receiving and reviewing" the judgment entered in favor of Nationwide Legal); (3) #43-#46 (interrogatories and requests for production to both NLFS and Nationwide Legal). Opp'n at 17. Defendant also objects to #91 and #94 of Exhibit 1(B) (Roulston preparing for and attending the deposition of Nationwide Legal). *Id.* Defendant also objects to all work done in connection with Plaintiffs' summary judgment motion against Nationwide Legal and Nationwide Legal's summary judgment motion against Plaintiffs. Opp'n at 6 (objecting to 36 entries in the Invoice); Opp'n at 16 (objecting to #138, #139, #155, #174 in Exhibit 1(C)) (Salmonsen reviewed depositions in preparation for motions for summary judgment and helped "proof" the "table of cases/footnotes" in the motion).

9

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

different," both legally and factually. *Id.* at 435; *Webb v. Sloan,* 330 F.3d 1158, 1169 (9th Cir. 2003). "The focus [of this analysis] is on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'" *Webb,* 330 F.3d at 1169. Other factors informing the issue of relatedness are "whether the unsuccessful claims were presented separately, whether testimony on the successful and unsuccessful claims overlapped, and whether evidence concerning one issue was material and relevant to other issues." *Thorne v. City of El Segundo,* 802 F.2d 1131, 1141 (9th Cir. 1986). In related cases, an attorney's time is "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," and "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Hensley,* 461 U.S. at 435. The Ninth Circuit has generously applied *Hensley's* test of relatedness, holding that claims are "related if either the facts *or* the legal theories are the same." *Webb,* 330 F.3d at 1169 (emphasis in original).[2]

If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435. Such decisions are within the district court's discretion. *Id.* at 437.

Here, the Court finds that Plaintiffs' claims against Nationwide Legal, which failed at summary judgment, were "related" to their claims against NFLS because they involved not only a "common core of facts" but were also "based on related legal theories." *Id.* at 435. Plaintiffs' entire complaint was born out of the same set of circumstances and facts, as all of the claims arose from the same alleged attempts by Defendants to collect their outstanding debt. Plaintiffs alleged that NLFS, Nationwide Legal, and their mutual employee/agent Railey were all liable for composing and selling fraudulent proof of service of summons documents in an attempt to collect their alleged debts. Thus, the "unsuccessful and successful claims arose out of the same" alleged "course of conduct." *Webb,* 330 F.3d at 1169. Second, the claims were also based on the related legal theories, as all of Plaintiffs' claims against NFLS, Railey, and Nationwide Legal alleged violations of the

---

[2] District courts in the Ninth Circuit apply this two-part test in awarding attorneys' fees under the FDCPA. *See, e.g., Schueneman v. 1st Credit of Am., LLC,* No. C 05 4505 MHP, 2007 WL 1969708, at *6 (N.D. Cal. July 6, 2007); *Hooper v. Capital Credit & Collection Servs., Inc.,* No. Civ. 03–793 PA, 2005 WL 1899380, at *1 (D. Or. Aug. 8, 2005).

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

FDCPA, RFDCPA, and UCL, and were advanced with the common goal of holding Defendants accountable for their illegal collection practices. Third, Plaintiffs alleged that Nationwide Legal and NFLS were joint venturers and alter egos, and thus had to utilize discovery to assess the relationship between the two entities. The Court ultimately found that Plaintiffs had "not raised a triable issue of fact that Nationwide is directly liable for the actions of Railey or that Nationwide is an alter ego or joint venturer of NLFS." ECF No. 79 at 12. Regardless of the Court's final decision, it appears that the Plaintiffs' attorneys could not be faulted for being "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley,* 461 U.S. at 435. Finally, the Court notes that the time spent on the unsuccessful claims against Nationwide Legal seems to have contributed to the success of the prevailing claim against NFLS. *See Cabrales v. City of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991) ("[E]ven if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of the other claims.")[3] This is because the Court's summary judgment order, which narrowed the potential scope of liability for Railey's acts to NLFS, likely was a factor influencing NFLS's decision to make a Rule 68 offer rather than risk trial.

Given that the unsuccessful and successful claims are related, the Court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435. The Court finds that the relief Plaintiffs attained – the maximum statutory damages against NFLS for their federal and state claims ($2000 per Plaintiff)[4] – was sufficiently commensurate with the hours expended on the litigation, and thus

---

[3] The court in *Cabrales* awarded attorney's fees even for time spent on issues upon which Plaintiff ultimately did not prevail. *Cabrales v. City of Los Angeles,* 935 F.2d 1050, 1052 (9th Cir. 1991). The court reasoned that it is rare for a litigant not to lose any battles on their way to winning the war. *Id.* at 1053. In fact, the court held losing is an integral part of winning. *Id.* As such, a plaintiff who is unsuccessful in a stage of litigation that was a necessary step to the ultimate victory is entitled to attorney's fees even for the unsuccessful stage. *Id.* The court reasoned that if the rule were otherwise, attorneys would only take claims they were certain of winning. *Id.*

[4] Under the FDCPA, a plaintiff may recover statutory damages of up to $1,000, and under the Rosenthal Act, a plaintiff may recover statutory damages for a willful and knowing violation in an amount not less than $100 but not greater than $1,000. 15 U.S.C. § 1692k(a)(2)(A); Cal. Civ. Code § 1788.30(b).

11

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

the Court rejects NFLS's request to deduct fees incurred in connection with claims against Nationwide Legal simply because Nationwide Legal prevailed.

NFLS raises the same argument as to Defendant Railey, whom Plaintiffs voluntarily dismissed without prejudice, ECF No. 86, and argues that no fees incurred in connection with Railey's liability should be granted. Opp'n at 13-14.[5] Plaintiffs respond that "Railey's role was an important part of the litigation[.]" Reply at 17. Like the analysis above with respect to Nationwide Legal, the Court similarly finds that the claims against Railey and NFLS were sufficiently related as to warrant rejection of Defendant's argument for reduction of fees. Because both the Plaintiffs and the Court had to assess the relationship between NFLS and Railey – i.e., whether and to what extent "NLFS exerted sufficient control over Railey," ECF No. 79 at 15, such that it could be held vicariously liable for Railey's actions – the claims against both Railey and NFLS were related.

**(2)** The Court moves on to Defendant's second objection. Defendant objects to #200, #202, #203 of Exhibit 1(B) (Roulston drafting notice of acceptance of offer of judgment, reviewing order by Court to file a status report, and drafting the status report), because they "occur[ed] after acceptance of the Rule 68 offer." Opp'n at 17. Defendant objects to #208 and #210 of Exhibit 1(A) (Schwinn drafting bill of costs and revising final billing statement regarding attorney's fees motion) also because they occurred "after acceptance." Opp'n at 19. The Court accepts Defendant's argument in part.

---

[5] Defendant objects specifically to (1) fees for Roulston's "recei[pt] and review" of the Court's "order to file status report" on September 27, 2013 concerning Railey, Exhibit 1(B) at #202; (2) Plaintiffs' October 11, 2013 filing of a status report concerning Eric Railey, Exhibit 1(A) at #204; (3) Plaintiffs' "notice of voluntary dismissal without prejudice as to Defendant Railey," Exhibit 1(A) at #206; (4) #134 and #137, Exhibit 1(B) (Roulston reviewing two emails concerning deposition of Railey); (5) #28, Exhibit 1(A) (Schwinn drafting documents in connection with "summons returned executed as to Caesar Eric Railey); (6) #32 of Exhibit 1(A) (Schwinn drafting request for entry of default against Railey); and (7) #41 of Exhibit 1(A) (Schwinn reviewing entry of default as to Railey), #205 of Exhibit 1(A) (Schwinn reviewing order by the Court to file motion for default judgment as to Railey). Opp'n at 14, 19. Defendant also objects to #27 and #29 and #207 of Exhibit 1(A) (Schwinn reviewing order reassigning case to the undersigned Judge, reviewing clerk's notice setting case management conference, and reviewing judgment against NLFS, ECF No. 87) because they are matters "pertaining to Railey," Opp'n at 19, but they are not.

12

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants made the offer of judgment on September 25, 2013. ECF No. 81-1 at 1. Plaintiffs accepted on September 26, 2013. ECF No. 81. The offer explicitly stated that Plaintiffs would be awarded their costs and attorney's fees "incurred to the date of this Offer of judgment." ECF No. 81-1 at 2. The offer also stated, "The only exception as to this offer limiting fees and costs to the date of this offer is that this Rule 68 offer does not preclude plaintiffs from requesting an award of reasonable attorney's fees for time expended for their motion for attorney's fees." *Id.* Because entries #200, #202, and #203 of Exhibit 1(B) were done *after* the date of the offer of judgment (on September 26, 2013, September 27, 2013, and October 9, 2013 respectively), Plaintiffs cannot be compensated for them, pursuant to the unambiguous terms of the offer. Therefore, the Court deducts $90 in fees that were incurred for those three entries. The Court, however, does not deduct fees stemming from entries #208 and #210 because they fall within the exception stated in the offer, as they reasonably relate to the Plaintiffs' motion for attorney's fees.

**(3)** Defendant objects to #21 and #24 of Exhibit 1(A) (Schwinn explaining ADR options to Plaintiff Long and reviewing email from defense counsel concerning stipulation for ADR process) because "Mr. Schwinn did not return telephone calls and did not ever communicate to engage in ADR Process." Opp'n at 18. The Court rejects Defendant's argument because it appears that Plaintiffs' counsel *did* consider ADR options, illustrated by the billing entry where they explained the option to their client.

**(4)** Defendant objects to #84, #85, and #86 of Exhibit 1(B) (Roulston drafting and making telephone calls concerning deposition scheduling and notices) because Mr. Schwinn "was also communicating and sending notices of depositions." Opp'n at 17. The Court rejects this argument because Defendant supplies no principled reason to reduce Plaintiffs' fee on the basis of alleged unnecessary duplication, the notices sent by both Roulston and Schwinn do not appear to be duplicative, and in any event, "[i]t is not uncommon for multiple attorneys working on a matter to appear at depositions, [and] participate in deposition preparation[.]" *Lota by Lota v. Home Depot U.S.A., Inc.*, 11-CV-05777-YGR, 2013 WL 6870006, at *10 (N.D. Cal. Dec. 31, 2013).

13

Case 5:12-cv-03578-LHK   Document 112   Filed 07/23/14   Page 14 of 23


United States District Court
For the Northern District of California

**(5)** Defendant objects to #121 and #129 of Exhibit 1(B) (Roulston reviewing deposition of Nationwide Legal's 30(b)(6) witness and taking telephone call with defense counsel regarding document production) because "both Nationwide and NLFS agreed to provide documents by CD." Opp'n at 17. The Court rejects this argument because it is cursory and unexplained, and because both reviewing a deposition and discussing discovery with opposing counsel is compensable.

**(6)** Defendant objects to #135, #136, #148, and #149 of Exhibit 1(B) (emails by Roulson to defense counsel concerning settlement discussions) because those "did not occur." Opp'n at 17. The Court rejects this objection; Defendant has failed to carry its burden because Plaintiffs submit a declaration by Roulston suggesting that such settlement discussions did occur. ECF No. 100-1 at ¶ 9.

**(7)** Defendant objects to #97 and #104 of Exhibit 1(C) (Salmonsen attending two depositions of Nationwide Legal as the videographer). Defendant argues "it is inappropriate to charge NLFS . . . 175 per hour to have some person set up a home video camera on a tripod. Such acts are done by counsel and are checked from time to time without incurring fees of $175 per hour." Opp'n at 16. Plaintiffs respond that this time is "reasonable and compensable." Reply at 14-15. The Court agrees with Defendant and finds that the 13 hours Salmonsen spent videotaping the two Nationwide Legal depositions is unreasonable. The Court acknowledges that fees for law clerks and paralegals are compensable as attorney's fees. *See Missouri v. Jenkins,* 491 U.S. 274, 284–85 (1989) (holding it is "self-evident ... that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals [and law clerks], as well as that of attorneys"); *Santiago v. Equable Ascent Fin.,* No. 11–3158, 2013 WL 3498079, at *4 (N.D. Cal. July 12, 2013) (applying *Jenkins* in the FDCPA fees context). However, attorney's fees may not be awarded for work that is clerical rather than legal in nature. *See Nadarajah v. Holder,* 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."); *see also Jenkins,* 491 U.S. at 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). Here, it is not clear that videotaping the depositions was anything more than a

14

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES
AND COSTS

purely clerical task. Although Plaintiffs claim that Salmonsen "assisted counsel" with the deposition and its "200 pages of exhibits," Reply at 14-15, Plaintiffs do not explain what additional services Salmonsen performed beyond videotaping. Accordingly, the Court declines to award attorney's fees for the 13 hours Salmonsen spent videotaping the depositions. The Court thus subtracts $2,275 from the award.

(8) Defendant objects to #176, #178, #179, and #182 of Exhibit 1(B) (Roulston emailing defense counsel concerning a stipulation to continue the trial date) because "the request was prompted by Mr. Roulston, and [defense counsel] prepared the stipulation at no charge to his client." Opp'n at 17. Defense counsel presents no evidence that he prepared the stipulation, and Plaintiffs' counsel claims that Plaintiffs' counsel drafted it. Reply at 16. Regardless, the Court finds that the fifty minutes spent by Roulston reviewing and discussing this stipulation is reasonable.

(9) Defendant objects to #186, #187, #188, #189, #190, #191, #192, #193, #194, #195, #197, and #199 of Exhibit 1(B) (Roulston making various email and telephone communications with defense counsel and his clients concerning Defendant's Rule 68 offer) because they "appear to be overbilling, extraneous billing, and internal communications as to the Rule 68 offer." Opp'n at 17. The Court rejects this objection because there is no evidence of undue overbilling and Defendant does not explain how Plaintiffs overbilled; this time is compensable as it directly led to the resolution of the case.

(10) Defendant objects to various entries in Exhibit 1(A) concerning Schwinn's billing. These include #4 (calling Plaintiff Long and explaining that two other people want to join the case as plaintiffs), #12 (taking telephone call from defense counsel and agreeing to allow Defendants an extension of time to file their Answer), #18 (receiving and reviewing Notice of Appearance), #25 (drafting declination to proceed before Magistrate Judge), #33 (reviewing email from defense counsel to the undersigned Judge's chambers regarding request for a telephonic appearance to attend case management conference), #48 (drafting letter to defense counsel regarding discovery reminder), #50 (reviewing defense counsel's letter regarding meet and confer), #60 (reviewing Order granting Defendant's request to appear telephonically), #98 (telephone call between Schwinn

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

and Roulston concerning defense counsel's "excessive speaking objections" during depositions), #177 (reviewing notice vacating motion hearing for summary judgment), and #43-46 (drafting requests for production and interrogatories). Opp'n at 18-19. Defendant provides no rationale for any of these objections, and thus they are denied.[6] Defendant also objects to #166 of Exhibit 1(B) (Roulston reviewing email from defense counsel concerning a one day extension for Defendants' opposition to Plaintiffs' motion for summary judgment), but does not provide any rationale for the objection. Opp'n at 17. Accordingly, the Court rejects the objection. While the Court notes that billing ten minutes for each of #60 and #177 in Exhibit 1(A) may seem excessive at first blush, Plaintiffs do not indicate that they did not charge for other comparable entries, *see generally* Invoice, and thus the Court finds that Plaintiffs' decision to bill some of the smaller tasks Plaintiffs completed is reasonable.

(11) Defendant argues there is no evidence that the three Plaintiffs ever agreed or committed to incur attorney's fees in this case, and cites how Plaintiffs have not submitted any evidence of any bills addressed to Isa, or Spies. Opp'n at 10 (noting how Plaintiffs' Invoice statement is directed to Plaintiff Long). The Court rejects this argument, as other courts have done, because "California courts have routinely awarded fees to compensate for legal work performed on behalf of a party pursuant to an attorney-client relationship, although the party did not have a personal obligation to pay for such services out of his or her own assets." *Smith v. Santa Rosa Press Democrat,* No. C 11–02411 SI, 2011 WL 7777108, at *2 (N.D. Cal. Dec. 19, 2011) (citation omitted); *Lolley v. Campbell,* 28 Cal.4th 367, 373 (2002) ("[I]t has been generally agreed that a party may 'incur' attorney fees even if the party is not personally obligated to pay such fees.").

(12) Defendant objects to #70, #71, #74-#79 of Exhibit 1(A) because they are "notices of depositions of persons, former employees or present employees, who are not managers, whose

---

[6] Defendant includes its argument for its objection to #43-#46 in its declaration accompanying the opposition. ECF No. 93 at 2 (Declaration of Allen Hyman, defense counsel). Putting aside the fact that including argument in an accompanying declaration is an impermissible violation of the page limits on the opposition brief, Defendant's argument fails on the merits because the only rationale provided is the cursory argument that the interrogatories served on Defendants were "stock interrogatories" and "duplicate as to Nationwide Legal and NLFS." *Id.* at 3.

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

depositions were not taken." Opp'n at 19. Plaintiffs respond that "time spent arranging deposition of NLFS's witnesses is compensable. NLFS listed these witnesses, and ultimately did not make any but two available." Reply at 17. The Court does not find these entries to be unreasonable.

(13) Defendant argues Plaintiffs' counsel did not meet and confer with defense counsel before filing the attorney's fees motion. Opp'n at 3 (citing Local Rule 54-5(b)(1) which holds that "[c]ounsel for the respective parties must meet and confer for the purpose of resolving all disputed issues relating to attorney's fees before making a motion for award of attorney's fees."). It is this Court's view that it is always the better practice to meet and confer before engaging in potentially unnecessary motion practice. However, Plaintiffs attach a declaration in which Roulston states that the parties had vigorous settlement discussions, and that the attorney's fees motion was "the direct result" of those discussions. ECF No. 100-1 at ¶ 9. Thus, it is not clear that Plaintiffs completely disregarded their duty to "meet and confer." In any event, Defendants have not cited any authority holding that fees may be deducted on this basis. Thus, the Court will not deduct fees on this basis.

(14) Defendant argues that Plaintiffs' Invoice does not summarize the tasks by timekeeper as required under Local Rule 56-5(b)(2). Opp'n at 3. The Court rejects this argument because there is no such local rule.

(15) Defendant argues that this lawsuit must have been brought for the sole purpose of generating attorney's fees. Opp'n at 7-10. Defendant notes that two of the plaintiffs (Long and Isa) had brought their claims against a related defendant (Main Street Acquisition Corporation) in state court, reached settlement agreements which released their consumer debts, and also notes how Plaintiffs' reply in support of Plaintiffs' motion for summary judgment in the instant federal case explicitly withdrew Long and Isa's claims for actual damages. *Id.* Accordingly, Defendant argues that in light of how Plaintiffs could not recover actual damages in this case and the fact that Plaintiffs could only have recovered a maximum of statutory damages of $2,000 each, there could have been no incentive for Plaintiffs *themselves* to bring this lawsuit. *Id.* Defendant does not state whether this argument means there should be a reduction of fees or no fees awarded at all. Plaintiffs respond that the settlements in the state court actions against *another* defendant is

17

irrelevant to Plaintiffs' claims against NLFS in the instant case. Reply at 11. The Court agrees, and thus rejects Defendants' argument.

**(16)** Though not completely clear, it appears Defendant argues that attorney's fees should be limited because the possibility of recovering only the statutory maximum of $2,000 per plaintiff is far less than the amount of attorney's fees incurred. *See* Opp'n at 5, 9. The Court rejects this argument, even if made, because district courts have been reluctant to reduce damages on the basis of a low monetary recovery in FDCPA cases, recognizing that statutory damages are capped. *Kottle v. Unifund CCR, LLC,* 2014 WL 243140, at *2 (C.D. Cal. Jan. 13, 2014) (awarding $10,782 in attorney's fees based on $2001.00 recovery and recognizing that because "there rarely will be extensive damages, a rule of proportionality would discourage vigorous enforcement of the FDCPA.")

## 2. Reasonableness of Hourly Rate

The Court now assesses the reasonableness of the hourly rate for each lawyer and the law clerk for Consumer Law Center. Plaintiffs request fees based on an hourly rate of $450 per hour for Schwinn, ECF No. 90-1 at 8, $300 per hour for Roulston, ECF No. 90-3 at 4, and $175 per hour for Salmonsen, ECF No. 90-1 at 9. It is unclear whether Defendant argues these rates are unreasonable or simply that the hours spent were unreasonably long, or both, as Defendant simply argues that "the fee motion does not support a reasonable loadstar of 'reasonable time expended,' by a 'reasonable hourly rate.'" Opp'n at 14. Nonetheless, the Court reviews the hourly rates of each individual to ensure that the requested rates are "in line with the prevailing market rate of the relevant community." *Carson,* 470 F.3d at 891 (internal quotation marks omitted).

In support of Schwinn's rate of $450 per hour, Plaintiffs offer Schwinn's declaration. ECF No. 90-1 ("Schwinn Decl."). Schwinn states this rate is "comparable to the rates being charged by attorneys of similar experience and expertise in the San Francisco Bay Area's federal and state courts," that he has a wealth of experience in federal FDCPA litigation stemming from his former Kansas practice and current California practice, and provides an extensive list of the consumer protection cases he has handled before various courts. *Id.* at ¶¶ 5-10, 12. Schwinn further states that

18

several courts in the Bay Area have approved a $400 per hour rate for his work. *Id.* ¶ 13. Plaintiffs also submit the expert declaration of Ronald Wilcox ("Wilcox"), another consumer protection attorney, in support of Schwinn's $450 rate. *See* ECF No. 90-4 ¶ 14 (Wilcox Decl.) (stating that the "market rate in the San Francisco Bay Area for state and federal litigation of consumer law issues that are similar in difficulty and complexity to the issues herein is a range extending from $300 to $600+ per hour, depending on the skill, experience and reputation of the attorney"); *id.* at ¶ 17 (noting that Schwinn's rate of $450 is reasonable). Plaintiffs also offer the declaration of Scott Maurer, another consumer protection attorney, who declares that Schwinn's rate is reasonable. ECF No. 90-5 at ¶ 6.

In support of Roulston's requested rate of $300 per hour, Plaintiffs provide Roulston's declaration in which he says that $300 per hour is "comparable to the rates being charged by attorneys of similar experience and expertise in California's federal and state courts." ECF No. 90-3 ¶ 10 (Roulston Decl.). Roulston states he has seven years of experience in consumer protection cases and that $300 per hour has been the rate his firm, Consumer Law Center, charges its clients for his services. *Id.* at ¶¶ 4-10. Wilcox also supports the reasonableness of the rate sought by Roulston, given Roulston's experience and qualifications. Wilcox Decl. at ¶ 18.

The Court concludes Plaintiffs have met their burden to show that Roulston and Schwinn's requested rates fall within the range of reasonable hourly rates for attorneys of comparable skill, experience, and reputation litigating similar cases in this Court's jurisdiction. "A court is justified in relying on a requesting counsel's recently awarded fees when setting that counsel's reasonable hourly rate." *Abad v. Williams, Cohen & Gray, Inc.,* No. 06–2550, 2007 WL 1839914, at *4 (N.D. Cal. June 26, 2007) (citing *Widrig v. Apfel,* 140 F.3d 1207, 1210 (9th Cir. 1998). Here, in addition to the fact that Plaintiffs have provided various affidavits in support, courts within this district have recently found that the rates of $450 per hour for Schwinn and $300 per hour for Roulston are reasonable and within the prevailing market rates for this district for attorneys with comparable skills and experience. *Tsoi v. Patenaude & Felix, et al.*, Case No. 3:13-CV-00143-SI, 2014 WL 1477521, at *3 (N.D. Cal. April 15, 2014) ("[T]he Court finds that the requested rates of $450 per

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

hour for Mr. Schwinn and $300 per hour for Mr. Roulston are reasonable and within the prevailing rates in the Northern District."); *see also DeAmaral,* 2014 WL 1309954, at *3 ("$450 per hour and $350 per hour for Mr. Schwinn and Mr. Roulston, respectively, are within the range of reasonable hourly rates for attorneys of comparable skill, experience, and reputation litigating similar cases in this jurisdiction.").

     In support of their request that Salmonsen, a law clerk, receive a rate of $175 per hour, Plaintiffs submit Schwinn's declaration, which states that Salmonsen graduated in 2009 from law school and has held the position of law clerk since May 2010. Schwinn Decl. at ¶ 14. Plaintiffs also argue that the *Laffey* matrix has a rate of $175 per hour for law clerks. Mot. at 8. The *Laffey* matrix is "an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C." *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 454 (9th Cir. 2010). The Ninth Circuit has rejected its adoption to set rates in the Northern District of California. *See id.* (questioning whether *Laffey* matrix is reliable outside the District of Columbia); *Am. Civ. Liberties Union of N. California v. Drug Enforcement Admin.*, C 11-01997 RS, 2012 WL 5951312, at *5 (N.D. Cal. Nov. 8, 2012). This is because reasonable fees "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). The "relevant community" is the district in which the lawsuit proceeds; here, the Northern District of California. *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992). Nonetheless, the Court approves the rate of $175 for Salmonsen. Although Plaintiffs have not submitted any evidence reflecting the rates charged by similarly qualified clerks at local law firms, this Court may rely on decisions of other courts awarding similar rates for comparable work in the same geographical area. *See, e.g., Nadarajah v. Holder,* 569 F.3d 906, 917 (9th Cir. 2009). Other courts have found the $175 rate reasonable, and this Court sees no reason to disagree. *See Californians for Disability Rights v. California Dept. of Transp.*, C 06-05125 SBA MEJ, 2010 WL 8746910, at *13-14 (N.D. Cal. 2010), *report and recommendation adopted sub nom. Californians for Disability Rights, Inc. v. California Dept. of Transp.*, C 06-5125 SBA, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) (finding rate of $175 reasonable for a law clerk).

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

### 3.      Lodestar for Fees

With the exceptions discussed above, the Court finds that the hours Plaintiffs claim are reasonable. As such, the Court calculates the lodestar as follows:

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| Fred W. Schwinn | $450 per hour | 37.7 | $16,965 |
| Raeon R. Roulston | $300 per hour | 121.3 | $36,390 |
| Matthew C. Salmonsen | $175 per hour | 23.5[7] | $4,112.50 |
| **Total** | | **182.5** | **$57,467.50** |

### B.      Costs

Plaintiffs also seek an award of costs and litigation expenses in the amount of $4,551.46, which represents the following: (1) $350 in filing fees; (2) $173.80 in photocopying; (3) $17.65 in postage expense; (4) $14.47 in overnight delivery expense; (5) $2,721.05 in court reporter fees for transcripts; (6) $369.60 in mileage expense; (7) $560.89 in travel expenses; (8) $149.00 in research expenses; and (9) $195.00 in process server fees. ECF No. 90-1 at 10. To support this claim, Plaintiff provided an itemized list of costs. ECF No. 90-2 at 20. Defendant objects, stating that only $590.56 costs should be awarded, and raise various specific objections. *See* Opp'n at 13, 15; Supp. Memo. at 5. Courts have "wide discretion" in determining whether and to what extent prevailing parties may be awarded costs, *K–S–H Plastics, Inc. v. Carolite, Inc.,* 408 F.2d 54, 60 (9th Cir. 1969), but must specify reasons for refusing to award costs. *Ass'n of Mexican–Am. Educators v. State of Cal.,* 231 F.3d 572, 591–92 (9th Cir. 2000) (citation omitted). Below, the Court addresses each of Defendant's five arguments.

First, Defendant argues that the requested filing fees, process server fees, and court reporter fees "precisely duplicate the already submitted cost bill." Opp'n at 2; Supp. Memo at 3. While Plaintiffs argue "there is no double counting," Reply at 5, Defendant is correct. The Clerk of the Court has already granted Plaintiffs' request for $3,266.05 in costs. ECF No. 91. This amount

---

[7] The Court notes that this figure includes time Roulston spent reviewing Defendant's Opposition to the Motion for Attorney's Fees and Costs, preparing the Reply, and preparing for the hearing. *See* Reply at 18-19. This is because an FDCPA plaintiff may recover reasonable fees for "time spent in establishing the entitlement to and amount of the fee." *Camacho,* 523 F.3d at 981 (internal quotation marks omitted).

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

covers the $350 filing fees, $195 fees for service, and $2,721.05 in transcript fees. *Id.* As these costs are duplicative of costs that make up Plaintiffs' $4,551.46 costs request, the Court reduces the costs award to avoid duplicating costs already approved by the Clerk. Thus, the Court deducts $3266.05 from Plaintiffs' cost request.

Second, Defendant objects to (1) research expenses for investigating the identity of Railey; (2) process server fees as to Railey; and (3) photocopying and postage expenses in connection with the request for entry of default against Railey. Supp. Memo. at 4-5; Opp'n at 13. Defendant argues, as it does in connection with opposing Plaintiffs' attorney's fees request, that Railey was dismissed by Plaintiffs without prejudice. Defendant also (1) objects to copying costs (a total of $88.20) made in connection with Defendants' and Plaintiffs' cross-motions for summary judgment, arguing that only half that amount is warranted because Nationwide Legal prevailed on summary judgment, Supp. Memo. at 4-5; and (2) objects to fees for service of process as to Nationwide Legal. *Id.* Again, as set forth in the attorney's fees section above, the Court does not find Defendant's argument concerning work done with respect to Railey and Nationwide Legal convincing, and will not deduct any of these costs.

Third, Defendant objects to overnight delivery expenses of $14.47 made in connection with "deposition notices served on Allen Hymen," who is defense counsel, because Plaintiffs "provided notices of depositions of former employees and non-managerial employees which they did not subpoena or take." Supp. Memo. at 5. Plaintiffs rebut that "NLFS listed these witness [in its initial disclosures], and ultimately did not make any but two available." Reply at 12, 17. The Court does not find these expenses unreasonable.

Fourth, Defendant objects to travel expenses incurred by Plaintiffs (mileage and hotel expenses incurred in connection with depositions of Defendants' 30(b)(6) witnesses in Los Angeles) in the amount of $930.49 ($560.89 for two nights of hotel charges and $369.60 for mileage). Supp. Memo. at 4. Defendant argues Plaintiffs have provided no invoice, and that another hotel ten minutes away from the deposition location had room rates of only $150 per night. *Id.* The Court rejects Defendant's argument. Defendant does not at all explain why the mileage

22

expense is unreasonable, and the Court is not convinced by Defendant's arguments concerning Plaintiffs' choice of hotel in light of how Plaintiffs' chosen hotel was only half a mile away from the deposition site. ECF No. 100-1 at ¶11 (Roulston Declaration). Further, Roulston declares that he and Salmonsen shared a hotel room for two nights rather than booking separate rooms, which shows conservation of financial resources. Reply at 18; ECF No. 100-1 at ¶ 11. *See Davis v. Hollins L.*, CIV. S-12-3107 LKK/A, 2014 WL 2875778, at *2 (E.D. Cal. June 24, 2014) (granting travel expenses to Plaintiffs in FDCPA case, noting that "[t]o deny attorneys from outside this judicial district the ability to recover their travel expenses may deter them from taking meritorious cases within this district, which would be an undesirable result.") .

Finally, Defendant claims that copying costs cannot be granted generally because those "are to be taxed as costs in the cost bill not as attorney's fees." Supp. Memo. at 5. However, courts do award copying costs in FDCPA cases in connection with attorney's fees motions, not just with a bill of costs. *See, e.g.*, *Rivera v. Portfolio Recovery Associates, LLC,* No. 13–2322 MEJ, 2013 WL 5311525, at *8 (N.D. Cal. Sept. 23, 2013); *Scott v. Federal Bond and Collection Service, Inc.,* No. 10–2825 LHK, 2011 WL 3652531, at *4 (N.D. Cal. Aug 19, 2011).

## IV.    CONCLUSION

Based on the reasons above, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Attorney's Fees and Costs. The Court awards Plaintiffs $57,467.50 in attorney's fees and $1,285.41 in costs, for a total award of $58,752.91.

**IT IS SO ORDERED.**

Dated: July 23, 2014

LUCY H. KOH
United States District Judge

Case No.: 12-CV-03578-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS